## In re NASSAU COUNTY STRIP SEARCH CASES.

Gardy Augustin, Heidi Kane, Mary Katherine Pugliese, Gregg Wills, Steven Roth, Oscar Avelar, Ralph Diliello, John Iaffaldano, on Behalf of Himself and Others Similarly Situated, Francis O'Day, and Stuart Moskowitz, Plaintiffs–Appellants,

v.

Joseph P. Jablonsky, Sheriff of Nassau County, County of Nassau, Thomas S. Gulotta, Nassau County Executive, Nassau County Sheriff's Department, Division of Corrections, Port Washington Police District and William Kilfoil, Chief of Police, Port Washington Police Department, Jane/John Does 1–200, Defendants–Appellees.

Docket Nos. 05–4206–CV(L), 05–4211–CV(CON), 05–4242–CV(CON).

United States Court of Appeals, Second Circuit.

Argued: June 12, 2006.

Decided: Aug. 24, 2006.

Robert L. Herbst, Beldock Levine & Hoffman LLP (Vera M. Scanlon, Spencer B. Freedman, on the brief), New York, NY, for Plaintiffs–Appellants.

Matthew D. Brinckerhoff, Emery Celli Brinckerhoff & Abady LLP, New York, NY, for Plaintiffs–Appellants.

Jeffrey G. Smith, Wolf Haldenstein Adler Freeman & Herz, LLP, New York, NY, for Plaintiffs–Appellants.

Dennis J. Saffran, Deputy County Attorney (Lorna B. Goodman, County Attorney of Nassau County, David B. Goldin, Deputy County Attorney, on the brief), Mineola, NY, for Defendants–Appellees.

Before: CABRANES, STRAUB, and HALL, Circuit Judges.

STRAUB, Circuit Judge.

This appeal is the latest installment in a series of litigations over the Nassau County Correctional Center's ("NCCC") blanket strip search policy for newly admitted, misdemeanor detainees ("the policy"). Plaintiffs, who were strip searched pursuant to the policy, appeal from a series of orders entered in the District Court for the Eastern District of New York (Denis J. Hurley, *Judge*) denying their repeated motions for class certification on the ground that individual issues predominated over common ones. *See* Fed.R.Civ.P. 23(b)(3) (requiring that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members").

During the course of class certification motion practice, plaintiffs requested that the District Court certify a Rule 23(b)(3) class solely on the issue of liability, as permitted by Rule 23(c)(4)(A). In response, defendants conceded their liability to plaintiffs. The District Court denied the motion. As an initial matter, the District Court expressed serious doubt over whether it could certify a class on the issue of liability since it already had determined that plaintiffs' claims, as a whole, failed the predominance test. Even if it could do so, the District Court reasoned that defendants' concession removed common liability issues from the predominance analysis. With common liability issues so excised, the Court concluded that individual liability issues, such as the application of an affirmative defense, predominated. The Court thus denied plaintiffs' motions for class certification on the issue of liability.

The precise issues on appeal are whether (1) a court may certify a Rule 23(b)(3) class as to a particular issue when it already has determined that the claim as a whole fails the predominance test; (2) common issues that are conceded remain part of the predominance analysis; and (3) the District Court exceeded its allowable discretion by failing to certify a class on the issue of liability. As set forth more fully below, we hold that (1) a court may employ rule 23(c)(4)(A) to certify a class as to an issue regardless of whether the claim as a whole satisfies the predominance test; (2) the District Court erred when it con-

cluded that defendants' concession eliminated liability issues from the predominance analysis; and (3) the District Court exceeded its allowable discretion by failing to certify a class on the issue of liability pursuant to Rules 23(b)(3) and (c)(4)(A). Accordingly, we reverse the District Court's orders dated September 23, 2003 and November 7, 2003 to the extent that they deny certification as to the issue of liability, and we remand for proceedings consistent with this opinion.

## BACKGROUND

In 1999, the District Court for the Eastern District of New York held that defendants' blanket policy of strip searching newly admitted, misdemeanor detainees violated clearly established Fourth Amendment law. *See Shain v. Ellison,* 53 F.Supp.2d 564 (E.D.N.Y.1999), *aff'd,* 273 F.3d 56 (2d Cir.2001). Although the policy has never been formally enjoined, *Shain v. Ellison,* 356 F.3d 211 (2d Cir.2004) (vacating injunction for lack of standing), defendants assert that following the District Court's 1999 decision, they ceased implementing it.

Shortly after the District Court's 1999 decision, plaintiffs brought three separate actions in the Eastern District of New York: *Augustin v. Jablonsky,* No. 99 Civ. 3126, *O'Day et al. v. Nassau County Sheriff's Department, et al.,* No. 99 Civ. 2844, and *Iaffaldano v. County of Nassau,* No. 99 Civ. 4238. Together, plaintiffs named as defendants Nassau County, Sheriff Joseph P. Jablonsky, the Sheriff's Department, County Executive Thomas S. Gulotta, the Division of Corrections, the Port Washington Police District and its chief of police, William Kilfoil, and up to 200 subordinate John and Jane Doe corrections officers.

Each action alleged that plaintiffs were arrested on misdemeanor charges unrelated to weapons or drugs and thereafter strip searched, without individualized suspicion, pursuant to the policy. Plaintiffs claimed that the strip searches violated 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article 1, section 12 of the New York State Constitution. They sought compensatory and punitive damages, a declaration that the policy was unconstitutional, and an injunction barring enforcement of the policy. They also sought to maintain each litigation as a class action.

In February of 2000, plaintiffs moved to consolidate all three actions and certify a unified class pursuant to Rule 23(b)(3).[1] Plaintiffs defined the class as follows: "[A]ll persons arrested for or charged with non-felony offenses who have been admitted to the Nassau County Correctional Center and strip searched without particularized reasonable suspicion." In an opinion and order dated March 8, 2001, the District Court granted that branch of the motion seeking consolidation and denied that branch seeking class certification. *See Augustin v. Jablonsky,* No. 99 Civ. 3126, 2001 WL 770839 (E.D.N.Y. Mar.8, 2001).

The District Court determined that plaintiffs satisfied the four requirements of numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R.Civ.P. 23(a). However, it denied certification for lack of common issue predominance. The Court recognized certain common questions, namely, (1) whether defendants maintained a blanket strip search policy; (2) whether that policy was unconstitutional; and (3) whether some or

---

1. Because motion practice on the question of class certification continued in various iterations for more than four years, we describe only those aspects of the District Court's decisions that are relevant to our own.

all defendants may be held liable. Nonetheless, it determined that individualized issues predominated, in particular: (1) whether subordinate Jane and John Doe defendants might escape liability in some cases because, notwithstanding the blanket policy, they had reasonable suspicion to search certain detainees; (2) the existence of proximate causation for each alleged injury; and (3) compensatory and punitive damages calculations.

The District Court noted the possibility of *sua sponte* certifying a class solely on the issue of liability pursuant to Rule 23(c)(4)(A), which allows for class certification "with respect to particular issues." It declined to do so because it did not wish to "undertake plaintiffs' burden" to "craft and submit a proposal," and because, as a legal matter, it perceived "considerable doubt as to the propriety of using Rule 23(c)(4)(A) in this fashion." In particular, the Court relied on *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir.1996) for the proposition that courts may not employ Rule 23(c)(4)(A) to single out the issue of liability for class treatment unless the "cause of action, *as a whole*," first satisfies Rule 23(b)(3)'s predominance requirement. *Id.* at 745 n. 21 (emphasis added by District Court).

Plaintiffs moved for reconsideration. They first asserted that they would no longer seek judgment against subordinate Jane and John Doe defendants. Since that modification would render the question of liability identical for nearly all class members, plaintiffs next asserted that the Court should certify a class on the issue of liability pursuant to Rule 23(c)(4)(A). They again defined the class as "all persons arrested for or charged with non-felony offenses who have been admitted to the [Nassau County Correctional Center] and strip searched without particularized reasonable suspicion."

In an opinion and order dated May 23, 2001, the Court agreed that plaintiffs' forbearance of their claims against subordinate defendants "removes the possibility of individualized liability determinations." "To be sure," the Court acknowledged, "the absence of individualized questions of liability militates in favor of partial certification solely on that issue." It nevertheless denied the motion.

The District Court again noted its "concern that partial certification might not be appropriate in the first instance where the cause of action, as a whole, does not satisfy the predominance requirement of Rule 23(b)(3)." "Even assuming" that Rule 23(c)(4)(A) could be used in that fashion, the Court denied the motion because plaintiffs' proposed class definition "would necessitate mini-trials just to determine class membership." In order to determine class membership, the Court believed, each would-be class member would have to show affirmatively that he was strip searched without particularized reasonable suspicion—a criterion that the definition incorporated. This burden was complicated by the fact that defendants claimed that they had ceased the blanket strip search policy after the Eastern District's 1999 decision in *Shain*, and thereafter conducted strip searches only *with* particularized reasonable suspicion.

In January 2003, plaintiffs renewed their motion for class certification as to liability and offered a new definition of the class as follows: "[A]ll persons arrested for misdemeanors or noncriminal offenses in Nassau County who thereafter were strip-searched at the NCCC pursuant to defendants' blanket policy, practice and custom which required that all arrestees be strip-searched upon admission to the facility ...." (alterations incorporated). By referring only to the "blanket policy," this new definition did not require plaintiffs to

show that reasonable suspicion was absent in each case, and it excluded individuals strip searched after the 1999 *Shain* decision, when defendants ceased implementing the policy. Plaintiffs also reiterated that they withdrew their claims against individual John and Jane Doe corrections officers.

In response, defendants conceded "the one common issue" that in their view "might be appropriate for class certification ... namely, whether the NCCC's strip search policy during the class period was constitutional." (alterations incorporated). Specifically, defendants recognized that they "are bound by *Shain* under the doctrine of collateral estoppel."

The District Court denied the renewed motion. In an opinion and order dated September 23, 2003, the Court determined that defendants' concession removed all common liability issues from its predominance analysis. Accordingly, the only liability issue that remained was an individual one: whether, notwithstanding the policy, some plaintiffs were searched based upon "reasonable and contemporaneously held suspicion." "With the liability issue thus circumscribed," the Court wrote, "certification as to that issue would not serve any purpose." Interestingly, the Court recognized that the individualized " 'reasonable suspicion inquiries' will be de minimis" for two reasons: because defendants conceded that "such an inquiry will only be sought regarding a limited number of plaintiffs," and because pursuant to *United States v. Colon*, 250 F.3d 130, 138 (2d Cir.2001), reasonable suspicion must be possessed by some law enforcement officer at the time of the search and may not be retroactively imputed.

Plaintiffs moved again for reconsideration on October 2, 2003. In an opinion and order dated November 7, 2003, the District Court adhered to its earlier determinations and also concluded—for the first time—that for the same reasons informing its predominance analysis, plaintiffs failed to satisfy another one of Rule 23(b)(3)'s requirements, specifically, that the proposed class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In one last effort to "determine if its decision was in some other way improper," the Court examined the policies of efficiency and uniformity animating Rule 23, and concluded that they did not favor certification. The Court also noted that individual plaintiffs would have little trouble securing counsel to pursue their claims because their damages likely would be large enough to provide the necessary economic incentive.

The parties later reached a settlement in which defendants paid the lump sum of $350,000 to the ten plaintiffs, who agreed to split the funds equally. Plaintiffs reserved their right to appeal the District Court's orders denying class certification, which they timely exercised.[2]

## DISCUSSION

### I. *Standard of Review*

 We review the District Court's denial of class certification for abuse of discretion. *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir.2001). However, we "review de novo the district court's conclusions of law that informed its decision to deny class certification." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir.2003) (quota-

**2.** Although these plaintiffs have settled their individual claims, they have reserved their right, in the event of a class settlement, to

"seek or receive additional compensation for attorney's fees and [their] time and effort as ... class representative[s]."

tion marks omitted). Further, we are "noticeably less deferential when the district court has denied class status than when it has certified a class." *Id.* (quotation marks omitted and alterations incorporated); *Robinson,* 267 F.3d at 162. We note that while the application of the incorrect legal principle often necessitates reversal under the "abuse of discretion" standard, such reversal need not indicate any "abuse" by the District Court as that word is commonly understood. *See Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 168–69 & nn. 4–6 (2d Cir.2001) (distinguishing among various meanings of "abuse of discretion").

## II. *The Requirements and Purpose of Rule 23(b)(3)*

In order to achieve class certification pursuant to Rule 23(b)(3), plaintiffs must (1) satisfy the four requirements of Rule 23(a), which are numerosity, typicality, commonality, and adequacy of representation; (2) demonstrate that common "questions of law or fact" predominate over "any questions affecting only individual members"; and (3) establish that the class action mechanism is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3).

 As a general matter, the "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir.2001) (quotation marks omitted). The Rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results." Fed.R.Civ.P. 23(b)(3) adv. comm. n. to 1966 amend.

 In light of these purposes, we have set forth that although "a defense may arise and may affect different class members differently, [this occurrence] does not compel a finding that individual issues predominate over common ones." *In re Visa Check,* 280 F.3d at 138 (internal quotation marks omitted). So "long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification." *Id.* (quotation marks omitted and alterations incorporated).

## III. *The District Court Erred in Failing to Certify a Class on the Issue of Liability Pursuant to Rules 23(b)(3) and (c)(4)(A)*

As set forth more fully below, we conclude that the District Court erred by failing to certify a class on the issue of liability.[3] We first conclude that, contrary to the District Court's reservations, a court may employ Rule 23(c)(4)(A) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement. Second, we hold that the District Court committed legal error in concluding that defendants' concession eliminated common liability issues from Rule 23(b)(3)'s predominance analysis. Third, this error caused the District Court to exceed its allowable discretion in concluding that individualized liability issues predominated over common ones, and that the class action mechanism is not a superior litigation vehicle under these circumstances.

---

**3.** We reach this conclusion without considering whether the District Court should have certified a class as to plaintiffs' entire claims—an issue that, as set forth more fully below, we ask the District Court to revisit in light of our holdings.

### A. A District Court May Certify a Class as to Specific Issues Regardless of Whether the Entire Claim Satisfies Rule 23(b)(3)

■ Whether a court may employ Rule 23(c)(4)(A) to certify a class as to a specific issue where the entire claim does not satisfy Rule 23(b)(3)'s predominance requirement is a matter of first impression in this Circuit. *See Robinson*, 267 F.3d at 167 n. 12 (identifying question as one of first impression and declining to resolve it). It also is a matter as to which the Circuits have split. *Id.*

The Fifth Circuit has adopted a "strict application" of Rule 23(b)(3)'s predominance requirement. *Id.* Under this view, "[t]he proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir.1996).

The Ninth Circuit holds a different view. Pursuant to that court's precedent, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *cf. Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439 (4th Cir.2003) (holding that courts may employ Rule 23(c) to certify a class as to one claim even though all of plaintiffs' claims, taken together, do not satisfy the predominance requirement).

We agree with the Ninth Circuit's view of the matter. First, the plain language and structure of Rule 23 support the Ninth Circuit's view. Rule 23(c)(4) provides as follows:

> When appropriate (A) an action may be brought or maintained as a class action *with respect to particular issues,* or (B) a class may be divided into subclasses and each subclass treated as a class, *and* the provisions of this rule shall *then* be construed and applied accordingly.

Fed.R.Civ.P. 23(c)(4) (emphases added).

As the rule's plain language and structure establish, a court must first identify the issues potentially appropriate for certification "and ... then" apply the other provisions of the rule, *i.e.*, subsection (b)(3) and its predominance analysis. *See Gunnells*, 348 F.3d at 439 (reasoning that the rule's language provides this "express command" that "courts have no discretion to ignore").

Second, the Advisory Committee Notes confirm this understanding. With respect to subsection (c)(4), the notes set forth that, "[f]or example, in a fraud or similar case the action may retain its 'class' character *only* through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." Fed.R.Civ.P. 23(c)(4) adv. comm. n. to 1966 amend. (emphasis added). As the notes point out, a court may employ Rule 23(c)(4) when it is the "only" way that a litigation retains its class character, *i.e.*, when common questions predominate only as to the "particular issues" of which the provision speaks. Further, the notes illustrate that a court may properly employ this technique to separate the issue of liability from damages.

In addition, as the Fourth Circuit has noted, the Fifth Circuit's view renders subsection (c)(4) virtually null, which con-

travenes the "well-settled" principle "that courts should avoid statutory interpretations that render provisions superfluous." *State St. Bank & Trust Co. v. Salovaara,* 326 F.3d 130, 139 (2d Cir.2003). Pursuant to the Fifth Circuit's view, "a court considering the manageability of a class action— a requirement for predominance under Rule 23(b)(3)(D)—[would have] to pretend that subsection (c)(4)—a provision specifically included to make a class action more manageable—does not exist until after the manageability determination [has been] made." *Gunnells,* 348 F.3d at 439. Accordingly, "a court could only use subsection (c)(4) to manage cases that the court had already determined would be manageable *without* consideration of subsection (c)(4)." *Id.*

Finally, we note that the commentators agree that courts may use subsection (c)(4) to single out issues for class treatment when the action as a whole does not satisfy Rule 23(b)(3). *See* 7AA Wright & Miller, *Federal Practice & Procedure* § 1790 (3d ed.2005) (stating that subsection (c)(4) "best may be used to designate appropriate classes or class issues at the certification stage" so that "the court can determine whether, as so designated, the other Rule 23 requirements are satisfied"); 6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:7 (4th ed. 2002) ("Even cases which might not satisfy the predominance test when the case is viewed as a whole may sometimes be certified as a class limited to selected issues that are common, under the authority of Rule 23(c)(4).").

For those reasons, we hold that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement.

## B. The District Court Erred When It Concluded that Defendants' Concession Eliminates Common Liability Issues from Rule 23(b)(3)'s Predominance Analysis

■ As noted above, the District Court reasoned that the major liability issues common to the class—whether defendants implemented a blanket strip search policy, and if so, whether they are liable for it— were eliminated from the predominance analysis by defendants' concession. Whether a concession can limit the predominance analysis in that fashion also is a question of first impression. For three reasons, we conclude that a concession does not eliminate a common issue from the predominance calculus, and that the District Court erred in holding otherwise.

■ First, because the predominance analysis tests whether the class is a " 'sufficiently cohesive' " unit, *In re Visa Check,* 280 F.3d at 136, all factual or legal issues that are common to the class inform the analysis. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives."). In turn, an issue is common to the class when it is susceptible to generalized, class-wide proof. *In re Visa Check,* 280 F.3d at 136 ("In order to meet the predominance requirement ... a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the. class as a whole, predominate over those issues that are subject only to individualized proof." (internal quotation marks omitted and alteration incorporated)); *see also Heerwagen v. Clear Channel Commc'ns,* 435 F.3d 219, 226 (2d Cir.2006) (noting that "a plaintiff must show that those issues ... subject to gen-

eralized proof outweigh those issues that are subject to individualized proof"); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002) (same). That the class-wide proof comes in the form of a simple concession rather than contested evidence certainly shortens the time that the court must spend adjudicating the issue, but it does nothing to alter the fundamental cohesion of the proposed class, which is the central concern of the predominance requirement. *See* 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4:25 (4th ed. 2002) ("[T]he predominance test does not involve a comparison of court time needed to adjudicate common issues weighed against time needed to dispose of individual issues...."); 7AA Wright & Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2005) ("[C]lockwatching is not very helpful in ascertaining whether class-action treatment would be desirable in a particular case."). Similarly, the fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an "issue" for the purposes of predominance analysis. Even resolved questions continue to implicate the "common nucleus of operative facts and issues" with which the predominance inquiry is concerned. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir.2000) ("[T]he fact that an issue has been resolved on summary judgment does not remove it from the predominance calculus."). Just as much as do contested issues, resolved issues bear on the key question that the analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound.

Second, Rule 23 seeks greater efficiency via collective adjudication and, relatedly, greater uniformity of decision as to similarly situated parties. *See* Fed.R.Civ.P. 23(b)(3) adv. comm. n. to 1966 amend. For these reasons we have written that when plaintiffs are "allegedly aggrieved by a single policy of defendants," such as the blanket policy at issue here, the case presents "precisely the type of situation for which the class action device is suited" since many nearly identical litigations can be adjudicated in unison. *In re Visa Check*, 280 F.3d at 146.

Eliminating conceded issues from Rule 23(b)(3)'s predominance calculus would undermine the goal of efficiency by requiring plaintiffs who share a "commonality of the violation and the harm," nonetheless to pursue separate and potentially numerous actions because, ironically, liability is so clear. *Id.* (noting that class action management "problems pale in comparison to the burden on the courts that would result from trying the cases individually"). Such a result also undermines the goal of uniformity by creating the risk of inconsistent decisions through the repeated litigation of the same question; here, for example, each individual plaintiff would have to establish anew that defendants were collaterally estopped by their prior concession and, if not, that defendants were liable on the merits. *Cf. Waste Mgmt. Holdings, Inc.*, 208 F.3d at 299 (concluding that because certification was "necessary to determine whether the prior resolution carries res judicata effect with respect to purported class members," the district court properly took account of "the common nucleus of operative facts and issues, even though certain of these already had been resolved"). Although defendants have conceded liability to these plaintiffs, there is no guarantee that they would concede liability in a case or series of cases involving significantly higher damages. Further, courts might differ as to whether, in light of the settlement, the requirements of collateral estoppel were met, specifically, whether the issue of liability was "actually litigated and decided" and whether its "resolution ... was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69

(2d Cir.2006); *cf. In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370, 387 n. 15 (2d Cir.2005) ("[I]t is clearly a permissible byproduct of settlement that future hypothetical plaintiffs might be forced to relitigate the same issues involved in the settled cases."); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 289 (2d Cir.2002).

Finally, we find further support for our view in the specific circumstances of this case. Defendants possess, but have not disclosed, records of all the newly-admitted misdemeanor detainees strip searched pursuant to the blanket policy. Absent class certification and its attendant class-wide notice procedures, most of these individuals—who potentially number in the thousands—likely never will know that defendants violated their clearly established constitutional rights, and thus never will be able to vindicate those rights. As a practical matter, then, without use of the class action mechanism, individuals harmed by defendants' policy and practice may lack an effective remedy altogether. *Cf. Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (noting that in certain cases "aggrieved persons may be without any effective redress unless they may employ the class-action device"); *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir.2004) ("[F]or most strip search claimants, class status here is not only the superior means, but probably the only feasible one (one-way collateral estoppel aside), to establish liability and perhaps damages."). Further, if defendants may utilize their concession to defeat class certification, it would work the perverse result of allowing them to escape the cost of their unconstitutional behavior precisely because their liability is too plain to be denied. No other court has sanctioned such a result; nor shall we.

Accordingly, we hold that defendants' concession of liability does not eliminate that otherwise common issue from Rule 23(b)(3)'s predominance analysis, and the District Court erred when it concluded to the contrary.

### C. The District Court Erred in Determining that, as to Liability, Individual Issues Predominated

■ As we have established, the District Court was (1) free to certify a class on the issue of liability notwithstanding its conclusion that the action as a whole did not satisfy the predominance requirement and (2) required to consider conceded common liability issues in its predominance analysis. We now apply these principles to the District Court's opinion and order dated September 23, 2003 in which it denied certification on the issue of liability, as well as that dated November 7, 2003 in which it adhered to its September decision. The class definition at issue was as follows: "[A]ll persons arrested for misdemeanors or non-criminal offenses in Nassau County who thereafter were strip-searched at the NCCC pursuant to defendants' blanket policy, practice and custom which required that all arrestees be strip-searched upon admission to the facility . . . ." (alterations incorporated).

As noted, that definition obviated the need for individualized proceedings to determine class membership. The definition referenced only defendants' "blanket policy," thus avoiding questions of probable cause and excluding individuals strip searched after the policy's cessation. Since defendants possess records of misdemeanor detainees strip searched during the policy period, determining class membership would be simple. *In re Visa Check*, 280 F.3d at 142 (approving class certification where "class members . . . can be identified by defendants' own records").

The class definition also implicated two broad common liability issues: whether the blanket policy existed and whether defendants are liable for its implementa-

tion. The only countervailing, individualized liability issue was whether, regardless of the policy, some plaintiffs were strip searched based upon "reasonable and contemporaneously held suspicion." The existence of this defense does "not . . . foreclose class certification." *Id.* at 138 (internal quotation marks omitted). Further, as the District Court recognized, "any such 'reasonable suspicion inquiries' will be de minimis"; indeed, defendants set forth that "such an inquiry will only be sought regarding a limited number of plaintiffs." In light of the pervasive character of the common liability issues and the admittedly *de minimis* nature of individualized liability issues, we conclude that the District Court erred by holding that individual liability issues predominated over common ones in its decisions dated September 23, 2003, and November 7, 2003.

### D. *The District Court Erred in Concluding that the Class Action Device Is Not a Superior Litigation Mechanism*

■■■ For Rule 23(b)(3) certification to be proper, a class action also must be the most "fair and efficient" method of resolving this case. *See* Fed.R.Civ.P. 23(b)(3). In analyzing that question, courts must consider four nonexclusive factors: (1) the interest of the class members in maintaining separate actions; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action." *See* Fed.R.Civ.P. 23(b)(3). Contrary to the District Court's conclusion in its decision dated November 7, 2003, all of these factors—as well as the reasons set forth above regarding efficiency and fairness—favor class certification.

First, the class members have little interest in maintaining separate actions since there already exists a concession of liability in this action and, without class notification, most putative class members will not even know that they suffered a violation of their constitutional rights. Second, this action already has progressed substantially and, again, offers the benefit of a liability phase that can be resolved quickly and conclusively. Third, concentrating the litigation in one forum simplifies and streamlines the litigation process. Fourth, we perceive little difficulty in managing a class action on the issue of liability, especially since the District Court already has noted that any individualized inquiries will be few and far between. Accordingly, we conclude that the District Court erred in holding that a class action was not the most fair and efficient litigation vehicle under these circumstances.

### CONCLUSION

We hold that (1) district courts may employ Rule 23(c)(4)(A) to certify a class on a designated issue regardless of whether the claim as a whole satisfies the predominance test; (2) conceded common issues remain part of the predominance analysis; and (3) the District Court exceeded its allowable discretion in denying Rule 23(b)(3) and (c)(4)(A) class certification on the issue of liability in its decisions dated September 23, 2003 and November 7, 2003.[4]

---

4. Because we have found that certification as to liability is proper pursuant to Rule 23(b)(3), there is "no necessity" of addressing alternate grounds for certification, such as Rule 23(b)(2), that the District Court rejected. *Cf.*

*In re Visa Check,* 280 F.3d at 147 (declining to review district court's ruling on Rule 23(b)(2) certification after concluding that Rule 23(b)(3) certification was proper) (internal quotation marks omitted). Further, since we

In light of our direction to certify a class on the issue of liability pursuant to the definition set forth in the September 23 decision, we also instruct the District Court to consider anew whether to certify a class as to damages as well. The District Court should bear in mind that "[t]here are a number of management tools available to a district court to address any individualized damages issues," such as bifurcation, the use of a magistrate or special master, alteration of the class definition, the creation of subclasses, or even decertification after a finding of liability. *In re Visa Check*, 280 F.3d at 141.

In sum, we remand to the District Court with instructions to certify a class as to liability and consider certifying a damages class as well.

base our decision on the September 23, 2003 and November 7, 2003 orders, we need not consider the District Court's August 20, 2004 order, in which it rejected a radically different class definition for failure to satisfy Rule 23(a).