# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-30195

GENE AND GENE LLC, Individually and as representatives of the Class

Plaintiff - Appellee

v.

BIOPAY LLC; ESSEX INSURANCE COMPANY; EVANSTON INSURANCE
COMPANY

Defendants - Appellants

Appeals from the United States District Court
for the Middle District of Louisiana

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case comes to us as a Rule 23(f) interlocutory appeal from an order certifying a class of plaintiffs who allege violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, specifically unsolicited advertisements sent from one fax machine to another. Two questions are before the court. The first question, raised for the first time on appeal, is whether the district court had subject-matter jurisdiction over this case. We hold that the district court had subject-matter jurisdiction under provisions of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). The second question is whether the district court abused its discretion by certifying the class. We hold that the district court abused its

discretion by certifying the class. We therefore reverse the district court's certification of the class and remand this case for such further proceedings as may be appropriate and not inconsistent with this opinion.

## I.

## A.

The TCPA prohibits, inter alia, the sending of an "unsolicited advertisement" via a fax machine to another fax machine. 47 U.S.C. § 227(b)(1)(C).[1] A fax is an "unsolicited advertisement" if it advertises "the commercial availability or quality of any property, goods, or services" and is transmitted without the recipient's "prior express invitation or permission." § 227(a)(4).[2] Moreover, in 1992, the Federal Communications Commission ("FCC"), in adopting rules to implement the TCPA, concluded that fax advertisements "from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8779 n.87 (1992).[3]

---

[1] The portions of TCPA relevant here were materially amended by the Junk Fax Prevention Act of 2005 ("JFPA"), Pub. L. No. 109-21, 119 Stat. 359 (codified at 47 U.S.C. § 227). Since the alleged violations of the statute occurred prior to the effective date of this amendment, July 9, 2005, citations to the TCPA are to the version in effect prior to the amendment, unless otherwise noted. Prior to the 2005 amendment, § 227(b)(1)(C) prohibited the "use [of] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

[2] The definition of "unsolicited advertisement" can now be found in subsection (a)(5), which provides that "[t]he term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." (Emphasis indicates language added by the 2005 amendment.)

[3] In 2003, the FCC issued an order reversing this presumption of consent. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14,014, 14,127 (2003) ("2003 TCPA Order"). The 2003 TCPA Order, however, never went into effect as the FCC on several occasions delayed the order's effective date and as, before the order's final effective date, Congress enacted the JFPA, which amended the TCPA and codified the established business relationship exemption, see JFPA § 2, Pub. L. No. 109-21, 119 Stat.

The recipient of an unsolicited fax advertisement may bring an action to enjoin future violations of the TCPA and/or to recover the greater of his actual damages or $500 for each such violation. § 227(b)(3). The monetary award may be trebled if the court finds that a violation was willful or knowing. Id.

## B.

Between 2001 and 2005, Defendant-Appellant BioPay, through a third-party contractor, sent over 4,000 fax messages advertising its services to potential clients in Louisiana. One of BioPay's faxes was sent to Gene & Gene, LLC ("Gene"). Gene filed a class-action suit against BioPay in federal court, alleging that BioPay violated the TCPA by sending unsolicited fax advertisements to Gene and to an unidentified number of class members.[4] After preliminary discovery, Gene moved for class certification, which BioPay opposed.[5]

---

359, 359-60 (2005) (codified at 47 U.S.C. § 227(b)(1)(C)(i)). See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 F.C.C.R. 3787, 3789-91 (2006) (providing the history of the FCC's rulemaking regarding the established business relationship exemption). Thus, applicable regulations incorporated an established business relationship exemption until this exemption was codified in the current version of the statute by the JFPA.

[4] Gene subsequently joined as co-defendants BioPay's insurers, Essex Insurance Company and Evanston Insurance Company. Defendants-Appellants submitted three briefs—one from BioPay and one from each insurer. Because these briefs contain similar arguments, we refer to them collectively.

[5] Gene's motion for class certification defined the proposed class as:

> All recipients of unsolicited telefacsimile messages and/or advertisements within the State of Louisiana which were transmitted and/or initiated by or on behalf of BIOPAY, L.L.C., between the dates of January 21, 2001, and through the present.

> The named Class shall not include any recipients from whom the Defendant has received the prior express invitation or permission to receive the telefacsimile advertisements.

The distinction between consenting and non-consenting recipients was the primary issue before the district court in the class-certification dispute.

BioPay argued that determining whether the recipient of each fax had consented to its transmission would require a series of individual factual determinations, or mini-trials, which made class certification improper. This argument was of course premised on the facts as they were developed in the case. BioPay has admitted that it purchased databases that included the contact information of potential customers, and BioPay also has admitted that it culled fax numbers from these databases. BioPay, however, has produced evidence that it also periodically culled fax numbers from other sources—from information submitted by merchants through BioPay's website, from information submitted at trade shows BioPay attended, and also from lists of companies with which BioPay or its affiliates had an established business relationship. BioPay thus contends that a significant number of the faxes it sent were consented to by the recipients. Further, BioPay has produced records of all the faxes that were successfully sent. BioPay also has produced testimony, however, that its database entries do not consistently or accurately reflect whether a given recipient had consented to receive fax advertisements, and this is because BioPay did not begin to record this information until May of 2004, and then only with sporadic and therefore unreliable consistency. BioPay thus contends that there is no class-wide basis by which to distinguish those fax recipients who had consented to receiving faxes from those who had not consented, which suggests that the determination of consent, or the lack thereof, would require hundreds of mini-trials.

Gene argued that class certification was proper because BioPay sent its fax advertisements as part of a common course of conduct. Gene argued that it is irrelevant that BioPay culled fax numbers from a variety of sources, as Biopay,

according to Gene, bears the burden of proving consent and has not retained the necessary documents or records to meet this burden.

The district court agreed with Gene, at least in part, and certified the class, determining that the proposed class meets the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Gene & Gene, LLC v. BioPay, LLC, 240 F.R.D. 239 (M.D. La. 2006). BioPay now appeals the district court's certification of the class and, for the first time on appeal, questions whether the district court had subject-matter jurisdiction over this case.

## II.

We may consider subject-matter jurisdiction at any point, including for the first time on appeal. Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 336 (5th Cir. 1999). Gene argues that we may not consider subject-matter jurisdiction during a Rule 23(f) class-certification appeal, but this is incorrect. At all times, even during a Rule 23(f) appeal, we may review the power of the federal courts to entertain an action. See Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 294 & n.9 (5th Cir. 2001) (reaching issue of standing on a Rule 23(f) appeal and noting that subject-matter jurisdiction is a similar question); see also FED. R. CIV. P. 12(h)(3) (noting that a court is to dismiss an action "whenever it appears" subject-matter jurisdiction is lacking). We now turn to consider whether the district court had subject-matter jurisdiction over this case.

The district court had subject-matter jurisdiction over this case pursuant to provisions of CAFA.[6] CAFA amended 28 U.S.C. § 1332 to provide the federal

---

[6] In its complaint Gene asserts that both federal-question jurisdiction and diversity jurisdiction exist. We have held that Congress did not create federal-question jurisdiction over private actions filed under the TCPA. Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 511, 514 (5th Cir. 1997) (citing 47 U.S.C. § 227(b)(3), permitting a private citizen to bring an action "in an appropriate court of that State"). Our decision in Chair King has been questioned by the Seventh Circuit in Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005). Brill asserted that our decision in Chair King cannot be reconciled with subsequent Supreme Court decisions in Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005), and Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691 (2003). Brill, 427

courts with original jurisdiction over class actions when there is minimal diversity, § 1332(d)(2), and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, § 1332(d)(2), (6). Minimal diversity is present here: Gene is domiciled in Louisiana and BioPay in Virginia. As for the amount in controversy, Gene's complaint held open the possibility of treble damages, depending on the state of the proof. (The complaint reads: "Further, if the court finds that the defendant willfully or knowingly violated the TCPA, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under 47 U.S.C. § 227(b)(3).") Given the possibility of treble damages under the TCPA, and given that BioPay allegedly sent over 4,000 unsolicited faxes, the aggregate amount in controversy exceeds $5 million (4,000 multiplied by $1,500 is $6 million). The district court therefore had subject-matter jurisdiction over this case.

---

F.3d at 450. Although we are always free to consider jurisdictional arguments sua sponte, we do not address any argument regarding the continued viability of our holding in Chair King as Gene did not present any such argument and as subject-matter jurisdiction, in any event, is proper under provisions of CAFA.

As to standard diversity jurisdiction, here there is no indication that any class member satisfies the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a). As noted, the TCPA allows statutory damages of $500 per offending fax, with up to treble damages for willful or knowing violations of the statute. Even with treble damages for willful or knowing violations of the statute, a single plaintiff would need to receive over fifty faxes to exceed the $75,000 threshold. There is no indication that any one class member received so many faxes and thus no indication that any one class member meets the amount-in-controversy requirement. Gene argues that the class members' claims may be aggregated, but this is incorrect. In Grant v. Chevron Phillips Chem. Co., we reiterated the Supreme Court's fundamental rule that the potential recoveries of class members may not be aggregated to satisfy the § 1332(a) amount-in-controversy requirement. 309 F.3d 864, 873 (5th Cir. 2002). The occasional exception to this rule is when multiple plaintiffs assert a "common right." See Snyder v. Harris, 334 U.S. 332, 335 (1969). This is not the case with the members of Gene's proposed class.

III.

A.

We review class-certification decisions for abuse of discretion. See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 408 (5th Cir. 1998). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." Id. We review de novo, however, whether the district court applied the correct legal standards in determining whether to certify the class. Id.

To obtain class certification, a party must satisfy Rule 23(a)'s four threshold requirements (numerosity, commonality, typicality, and adequacy of representation), as well as the requirements of Rule 23(b)(1), (2), or (3). See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997). We emphasize that it is the party seeking certification that bears the burden of establishing that the requirements of Rule 23 have been met. O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 737-38 (5th Cir. 2003). And we also emphasize that district courts must "conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." Id. at 738 (internal quotation marks omitted).

As noted above, the district court determined that Gene's proposed class satisfies the requirements of Rule 23(a) and (b)(3).[7] BioPay argues that Gene

---

[7] Rule 23(a) states:

(a) Prerequisites: One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;
    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4) the representative parties will fairly and adequately protect the interests of the class.

fails to establish commonality and typicality under Rule 23(a) and fails to establish either of the requirements of Rule 23(b)(3). BioPay's argument is that the class members' claims are too dissimilar for class treatment, particularly with respect to the issue of whether each of the class members consented to receive fax advertisements from BioPay. Gene counters that the requirements of Rule 23(a) and (b)(3) are satisfied because BioPay engaged in a common course of conduct.

Since the thresholds for commonality and typicality under Rule 23(a) are not high, see James v. City of Dallas, 254 F.3d 551, 571 (5th Cir. 2001), we will assume that Rule 23(a) is satisfied and turn to evaluate the parties' arguments against the more exacting demands of Rule 23(b)(3). A party seeking class certification under Rule 23(b)(3), as Gene does here, must demonstrate both "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Because we conclude that Gene's proposed class does not satisfy the predominance requirement and that the district court abused its discretion in determining otherwise, we do not address Rule 23(b)(3)'s superiority requirement.

---

In relevant part Rule 23(b)(3) states:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
. . .
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

B.

The predominance inquiry requires a court to consider "how a trial on the merits would be conducted if a class were certified." Bell Atl. Corp. v. AT&T Corp., 339 F.3d 294, 302 (5th Cir. 2003) (quotation marks and citation omitted). This, in turn, "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." Id. (quotation marks and citation omitted). The predominance requirement of Rule 23(b)(3), though redolent of the commonality requirement of Rule 23(a), is "far more demanding" because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623-24.

The district court determined that the predominance requirement was satisfied based on a "common course of conduct, fax blasting." The district court did not, however, identify the substantive issues that will control the outcome of the case, assess which of these issues will predominate, or determine whether these issues are common throughout the proposed class. We are most concerned, however, that the district court failed to address the broader consideration of the predominance requirement: The district court did not explain how the common course of conduct it described would affect a trial on the merits. Thus, the district court's assertion that this case would not degenerate into a series of individual trials is largely unsupported and is, in our opinion, mistaken.

The district court referenced Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620 (5th Cir. 1999), to support its determination that BioPay's common course of conduct, as described by Gene, i.e., the transmission of identical faxes via the same procedure, satisfies the predominance inquiry. The district court noted that in Mullen "the putative class members [were] symptomatic [of occupational respiratory illness] by definition and claim[ed] injury from the same

defective ventilation system over the same general period of time." Id. at 627. The district court, however, mistakes the force of the quoted language. That the putative class members in Mullen suffered the same injury from the same source over the same general period of time was relevant because these facts allowed for a class-wide basis for deciding two "pivotal" issues—seaworthiness and negligent breach of duty. Id. at 626-27. Mullen, then, indicates only that commonalities among class members will sometimes, but not necessarily always, allow for a class-wide basis for deciding predominant issues. Here, the district court simply noted a common course of conduct, fax blasting, but did not determine, as we did in Mullen, whether the common course of conduct provided a class-wide basis for deciding the predominant class issues of fact and law.

C.

To decide whether there is a class-wide basis for deciding the predominant issues, we must first ascertain which are the predominant issues that must be decided on a class basis. Gene attempts to frame several substantive issues and asserts that these issues, as framed, are common to the class. But one substantive issue undoubtedly will determine how a trial on the merits will be conducted if the proposed class is certified. This issue, as all ultimately acknowledge, is whether BioPay's fax advertisements were transmitted without the prior express invitation or permission of each recipient. Thus, the predominant issue of fact is undoubtedly one of individual consent. We now turn, as is necessary to determine whether the predominance requirement is satisfied, to consider how this predominant and basically factual issue will affect a class-action trial on the merits.

As a threshold matter, the parties first engage an issue irrelevant to our analysis: Gene argues that BioPay must establish consent as an affirmative defense; BioPay argues that consent is an element of the cause of action. The district court did not decide this issue, and we do not concern ourselves with it

either. An affirmative defense is not per se irrelevant to the predominance inquiry, as the parties seem to believe. We have noted that the "predominance of individual issues necessary to decide an affirmative defense may preclude class certification." In re Monumental Life Ins. Co., 365 F.3d 408, 420 (5th Cir. 2004) (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996) (explaining that "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of certification issues")). Further, this case is an exemplar of why affirmative defenses are not per se irrelevant to the predominance inquiry. Whether established by BioPay as an affirmative defense or by Gene as an element of the cause of action, the issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits.

As to how consent, vel non, will be established, we note first that several federal district courts have addressed this issue. We find their efforts instructive. In Forman v. Data Transfer, Inc., Forman moved for the certification of a class composed of "all residents and businesses who . . . received unsolicited facsimile advertisements" within a given period. 164 F.R.D. 400, 402 (E.D. Pa. 1995). The Forman court, in denying class certification, noted that the gravamen of Forman's complaint was not a "common course of conduct" by Data Transfer but "a series of individual transmissions under individual circumstances, each of which is an alleged violation of the statute." Id. at 404. The Forman court consequently determined that the predominance requirement was not satisfied. Id.; see also Kenro, Inc. v. Fax Daily, Inc., 962 F.Supp. 1162, 1169-70 (S.D. Ind. 1997) (denying class certification because consent would have to be proven via individual inquiries as to each class member); Levitt v. Fax.com, 2007 WL 3169078, at *4-7 (D. Md. May 25, 2007) (same).

In contrast, in Kavu v. Omnipak Corp., Kavu moved for the certification of a class composed of "[a]ll persons who received an unsolicited advertisement

11

. . . via facsimile from [Omnipak]" within a given period. 246 F.R.D. 642, 645 (W.D. Wash. 2007). The Kavu court, in granting class certification, determined that the question of consent was susceptible to common proof. Id. at 647. Importantly, the Kavu court did not disagree with earlier federal district court determinations that individual consent issues could preclude class certification. Id. Rather, the Kavu court determined that in its case the question of consent presented would not require "individual evidence." Id. This was true because Omnipak had obtained all of the fax recipients' fax numbers from a single purveyor of such information and because, given this fact, Kavu was able to propose a novel, class-wide means of establishing the lack of consent based on arguably applicable federal regulations. Id. (citing 47 C.F.R. § 64.1200(a)(3)(ii)(B), which indicates that if a "sender obtains the facsimile number from a [commercial database], the sender must take reasonable steps to verify that the recipient agreed to make the number available for distribution"). The common question in Kavu was thus whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there were therefore no questions of individual consent. Id.; see also Hinman v. M and M Rental Ctr., 2008 WL 927910, at *4 (N.D. Ill. Apr. 7, 2008) (granting class certification on similar grounds).

We reference Forman and Kavu in some detail to make a few basic points. First, as these cases illustrate, violations of § 227(b)(1)(C) of the TCPA are not per se unsuitable for class resolution.[8] But, as these cases also illustrate, there are no invariable rules regarding the suitability of a particular case filed under this subsection of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper. This of course means

---

[8] By this we mean only that in some cases there may be some possibility of class-wide proof on the question of consent.

that plaintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that district courts must only certify class actions filed under the TCPA when such a theory has been advanced. With these premises in mind, we now focus more directly on the parties' arguments.

D.

Gene asserts that "testimony establishes that BioPay never obtained prior express permission or invitation from any of the class members and that all of the faxes were sent in accordance with the same procedure." From this, Gene urges that "individual determinations are unnecessary."

BioPay, however, strenuously asserts that the evidence shows that some of the fax advertisements it sent were solicited by the recipients, but which ones can only be decided on a case-by-case basis. As noted above, the evidence shows that BioPay culled fax numbers from purchased databases but also periodically culled fax numbers from various other sources—from information submitted by merchants through BioPay's website, from information submitted at trade shows BioPay attended, and also from lists of companies with which BioPay or its affiliates had an established business relationship.[9] BioPay has records of all the faxes that were successfully sent, but produces unrefuted testimony that its database entries do not consistently or accurately reflect whether a given recipient had consented to receive fax advertisements. BioPay argues that because the evidence shows that the recipients' fax numbers were collected over time and from a variety of sources, individual inquiries of the recipients are necessary to sort out which transmission was consented to and which was not.

---

[9] Gene challenges the established business relationship regulations, arguing that they are contrary to the clear intent of the statute. But we do not address this argument, as doing so is unnecessary for the resolution of this appeal. Given the facts of this case, we would hold that consent is not a common fact issue even if the established business relationship exemption was unavailable, as consent can be established by other means.

In short, there is no class-wide proof available to decide consent and only mini-trials can determine this issue.

Under the established facts of this case, we think BioPay has the compelling argument. First, Gene's assertion that testimony establishes that BioPay never obtained prior express invitation or permission from any class member is unsupported. BioPay employees testified to the contrary and also testified that there is no class-wide basis for distinguishing which recipients gave consent and which did not. This evidence was not contradicted.

Second, and as we noted above in our discussion of Mullen, that BioPay sent its fax advertisements in accordance with the same procedure is not necessarily determinative of whether class-wide proof is available to establish consent. Moreover, and despite Gene's arguments to the contrary, the common question distinguishing Kavu from Forman is absent here. Unlike the single-source contact list in Kavu, here BioPay culled fax numbers from a variety of sources over a period of time, such that class-wide proof of consent is not possible under the theory advanced in Kavu.

And, finally, and perhaps most importantly, we do not perceive in Gene's arguments any other sensible method of establishing consent or the lack thereof via class-wide proof. To be sure, the burden is on Gene to show that the requirements for class certification are satisfied. Gene has not presented facts or arguments to support that this type of dispute will not exist as to a significant number of class members.

Thus, the determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative. Gene has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom BioPay may be liable under the TCPA. Indeed, neither Gene nor the district court explain how the course of conduct they reference would be of particular relevance at trial. This prevents the

purported class from having the required cohesiveness and defeats the predominance requirement.

We emphasize again, however, that we do not hold as a matter of law that the consent requirement in the case before us defeats the possibility of class certification. We merely hold that Gene has failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class involved in this case; that this leads to the conclusion that myriad mini-trials cannot be avoided; and that, given these conclusions and those we have reached above, the district court abused its discretion in certifying the class

IV.

For the assigned reasons, we reverse the district court's certification of the class and remand this case for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.