Blitz v. Agean, Inc., 2012 NCBC 20.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF DURHAM<br><br><br>JONATHAN BLITZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AGEAN, INC.,<br><br>Defendant. | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>05 CVS 441<br><br><br><br><br>**ORDER & OPINION** |

*Margulis Law Group by Max G. Margulis for Plaintiff.*

*Brown, Crump, Vanore & Tierney, LLP by W. John Cathcart, Jr. and Scott Brown for Defendant.*

Murphy, Judge.

{1}    **THIS MATTER** is before the Court upon Plaintiff Jonathan Blitz's ("Blitz") Motion for Class Certification.  After hearing from the parties on August 16, 2011, and having considered the matters of record and contentions of counsel, the Court, in the exercise of its discretion, **DENIES** Plaintiff's Motion for Class Certification, finding as follows:

I.

PROCEDURAL BACKGROUND

{2}    On January 28, 2005, Plaintiff filed his first Complaint in this case. Two Amended Complaints were subsequently filed on February 11, 2005 ("First Amended Complaint") and June 8, 2010 ("Amended Complaint") respectively.  (First Am. Compl. 5; Am. Compl. 9.)

{3}    On October 6, 2006, Plaintiff filed a Motion to Amend Class Definition and moved for class certification ("First Motion for Class Certification") on October 17, 2006.  (Mt. Am. Class Definition 2, 7.)

{4} This Court denied Plaintiff's Motion for Class Certification on June 25, 2007. On June 2, 2009, the North Carolina Court of Appeals affirmed in part, reversed in part, and remanded this Court's Order & Opinion denying Plaintiff's First Motion for Class Certification. *See Blitz v. Agean, Inc.*, 197 N.C. App. 296, 677 S.E.2d 1 (N.C. Ct. App. 2009), *aff'ing in part, rev'ing in part Blitz v. Agean, Inc.*, 2007 NCBC 1 (N.C. Super. Ct. Jun. 25, 2007), http://www.ncbusinesscourt.net/opin ions/2007%20 NCBC%2021.pdf.

{5} On May 18, 2011, Plaintiff filed an Amended Motion for Class Certification. (Am. Mt. for Class Certif. 13.) Defendant filed its Response on June 17, 2011, and this Court held a hearing on August 16, 2011.

II.

STATEMENT OF FACTS

{6} Plaintiff is a resident of Durham County, North Carolina. (Am. Compl. ¶ 7.)

{7} Defendant is a North Carolina corporation that operates two restaurants known as Papa's Grille and Front Street Café in Durham, North Carolina. (Am. Compl. ¶ 8; Br. in Supp. of Am. Mt. for Class Certif. 1.) Over the course of its operation, Papa's Grille has, on average, served between 120 and 160 meals per day, and more than 500,000 meals during its twelve-year existence. (Def. Second Supplemental Answers to Pl.'s Second Set of Interrog. 5.)

{8} Papa's Grill has received numerous inquiries concerning its hours of operation, menus, accommodations, and capacity; and multiple requests that Papa's Grille fax or e-mail its menus and other materials relating to the restaurant or its services. (Def. Second Supplemental Answers to Pl.'s Second Set of Interrog. 4–5.) Papa's Grill maintains a computer database ("Customer List") of individuals who have made inquiries about the restaurant and/or requested to receive faxes. (Def. Second Supplemental Answers to Pl.'s Second Set of Interrog. 5–6; Def.'s Resp. to Pl.'s First Mt. for Class Certif. 5; *Blitz*, 197 N.C. App. at 311, 677 S.E.2d at 10.)

{9} In April 2004, Defendant purchased from InfoUSA a list of approximately 983 business fax numbers in the three zip codes surrounding Papa's

Grille (the " InfoUSA List") and contracted with Concord Technologies, Inc., to send faxes to the numbers on the list. (Pl.'s Br. in Supp. of Am. Mt. for Class Certif. 1.)

{10} Defendant did not, however, maintain any records documenting that it had obtained express prior invitation or permission to send faxes to the individuals on its Customer List, and Defendant was not certain whether it supplemented the fax list it acquired from InfoUSA with numbers from its own customer list acquired through the regular course of business.

{11} During 2004, Concord Technologies successfully faxed 7,000 of Defendant's fax advertisements to the numbers on the list acquired from InfoUSA. (Pl.'s Mem. Supp. First Mt. for Class Certif. 1–2.)

{12} Plaintiff received five (5) of the fax transmissions. (Pl.'s Br. in Supp. of Am. Mt. for Class Certif. 1.)

{13} The Amended Complaint alleges that Defendant's fax transmissions violated the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which, *inter alia*, prohibits the transmission of "unsolicited advertisements" to fax machines. (Am. Compl. ¶ 2.)

{14} Plaintiff seeks certification on behalf of a class alleging that Defendant violated the TCPA when its agent, Concord Technologies, allegedly faxed thousands of unsolicited advertisements throughout 2004. (Am. Compl. ¶¶ 4, 22–23.)

{15} Plaintiff defines the class as "[t]he holders of the 978 telephone numbers contained in the InfoUSA database Exhibit LL between the dates of February 1, 2004, and December 31, 2004, inclusive." (Br. in Supp. of Am. Mt. for Class Certif. 8.)

{16} As provided in the TCPA, Plaintiff is seeking for each proposed class member $500 in statutory damages per fax, injunctive relief, and any other relief the Court may deem just and proper. (Am. Compl. 7.)

III.

CLASS CERTIFICATION STANDARD

{17} In North Carolina, class actions are governed by Rule 23 of the North Carolina Rules of Civil Procedure ("Rule 23"). N.C.R. Civ. P. 23. Rule 23(a)

provides that "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued." N.C.R. Civ. P. 23(a). "Whether a proper 'class' under Rule 23(a) has been alleged is a question of law." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 280, 354 S.E.2d 459, 464 (1987).

{18} "The party seeking to bring a class action under Rule 23(a) has the burden of showing that the prerequisites to utilizing the class action procedure are present." *Id.* at 282, 354 S.E.2d at 465.

{19} "[A] 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Id.* at 280, 354 S.E.2d at 464.

{20} When determining whether common issues predominate over issues affecting only individual class members, a court must look to see whether the individual issues are such that they will predominate over common ones as the focus of the litigants' efforts. *See Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 550–54, 613 S.E.2d 322, 327–29 (2005) (discussing whether common or individual issues predominated in the case).

{21} In addition to finding the existence of a class, the court must also find that the class meets the requirements for class certification which prescribe that: (1) the named representatives must establish that they will adequately represent the interests of all members located both inside and outside the jurisdiction, (2) there must be no conflict of interest between the named and unnamed members of the class, (3) the named parties must have a genuine personal interest in the action, (4) the class must be so numerous as to make it impracticable to bring each member before the court, and (5) adequate notice must be given to the class members. *Crow*, 319 N.C. at 282–84, 354 S.E.2d at 465–66.

{22} Even where the requirements for class certification under Rule 23(a) are met, "it is within the trial court's discretion to determine whether 'a class action

is superior to other available methods for the adjudication of the controversy.'" *Harrison*, 170 N.C. App. at 548, 613 S.E.2d at 326 (quoting *Crow*, 319 N.C. at 284, 354 S.E.2d at 466). When deciding whether to grant certification, "'[t]he trial court has broad discretion . . . and is not limited to consideration of matters expressly set forth in Rule 23 or in' case law." *Id.* at 548 n.2, 613 S.E.2d at 326 (quoting *Crow*, 319 N.C. at 284, 354 S.E.2d at 466).

{23} "Class actions should be permitted where they are likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results. The usefulness of the class action device must be balanced, however, against inefficiency or other drawbacks." *Crow*, 319 N.C. at 284, 354 S.E.2d at 466.

{24} Among the potential drawbacks the trial court may consider in its discretion are matters of equity. *Id.* at 284, 354 S.E.2d at 466 (citing *Maffei v. Alert Cable TV, Inc.* 316 N.C. 615, 617, 342 S.E.2d 867, 870 (1986)). As this Court has previously held, class actions can be used "to put greater financial pressure on defendants to settle with the individual plaintiff[,] . . . [thus judicial oversight] reduces the incentive to plaintiff's counsel to misuse the class action device solely in an effort to leverage a settlement." *Lupton v. Blue Cross & Blue Shield*, 1999 NCBC 3, ¶¶ 10–11 (N.C. Super. Ct. June 14, 1999), http://www.ncbusinesscourt.net/opinions/1999%20NCBC %203.htm.

{25} When reviewing whether class certification was appropriate in this matter, the North Carolina Court of Appeals held that:

> claims brought pursuant to the TCPA are not *per se* inappropriate for class actions. Decisions whether to certify TCPA claims for class actions should be made on the basis of the particular facts presented and theories advanced, and the 'trial court has broad discretion in determining whether class certification is appropriate, and is not limited to those prerequisites which have been expressly enunciated in either Rule 23 or in *Crow*.'

*Blitz*, at 311–12, 667 S.E.2d at 11 (quoting *Nobles v. First Carolina Commc'ns, Inc.*, 108 N.C. App. 127, 132, 423 S.E.2d 312, 315 (1992)).

IV.

CONCLUSIONS OF LAW

{26}    Under the relevant version of the TCPA in force at the time Defendant's alleged actions occurred, it was unlawful for any person within the United States "to use any telephone facsimile machine, computer, or other device to *send* an unsolicited advertisement to a telephone facsimile machine . . . ." 47 U.S.C. § 227(b)(1)(c) (2004) (emphasis added).  The TCPA provides that a recipient may bring "an action to recover for actual monetary loss . . . or to receive $500 in damages for each . . . violation."  *Id.* at § 227(b)(3)(B).

{27}    The term unsolicited advertisement, as used in the statute, means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."  *Id.* at § 277(a)(4).

{28}    When class certification is sought in TCPA cases:

> violations of § 277(b)(1)(C) . . . are not *per se* unsuitable for class resolution. But, . . . there are no invariable rules regarding the suitability of a particular case filed under this subsection of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper. This of course means that *plaintiffs must* advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that . . . courts must only certify class actions . . . when such a theory has been advanced.

*Blitz*, 197 N.C. App at 305, 677 S.E.2d at 7 (quoting *Gene & Gene LLC, v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. La. 2008) (emphasis added).

{29}    "The primary issue . . . in this case, and the primary issue courts from other jurisdictions have [faced] . . . when dealing with class certifications involving the TCPA, is whether, . . . individualized issues concerning whether sent fax advertisements were 'unsolicited' predominate over issues of law and fact common to the proposed class members."  *Blitz*, 197 N.C. App. at 303, 677 S.E.2d at 6.

{30}    When considering whether questions common to the class will predominate the court may "consider 'how a trial on the merits would be conducted if a class were certified.'"  *Gene & Gene LLC*, 541 F.3d at 326 (quoting *Bell Atl.*

*Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)). The process of evaluating how a trial would proceed "'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials.'" *Id.* (citation omitted.) However, this Court finds persuasive like others, that the presence of a predominating common question is not the end of the analysis. A court's attempt at preventing a class action from degenerating into a series of individual trials also requires it to determine whether it is likely that the answers to those common questions will be consistent among class members. "[A] common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class." *Carnett's, Inc. v. Hammond*, 610 S.E.2d 529, 532 (Ga. 2005).

V.

DISCUSSION

{31} As a threshold matter, Plaintiff argues that the question of whether consent was obtained is a "potential defense that may be raised by Defendant[,] . . . [and] a court is proscribed from considering defenses . . . in adjudicating a motion for class certification." (Pl.'s First Mt. for Class Certif. n.2.) However, this is not the law in North Carolina. To the contrary "[i]t [is] Plaintiff's burden to show the fax advertisements sent to the class were unsolicited." *Blitz*, 197 N.C. App. at 311, 677 S.E.2d at 10. Even if this were not the case, implicit in an assessment of how a trial would operate under a particular class definition, is an evaluation of how potential defenses would affect whether common questions predominate over inquiries individual to each class member. This court finds persuasive, like other courts, that "the 'predominance of individual issues necessary to decide an affirmative defense may preclude class certification.'" *Gene & Gene LLC*, 541 F.3d at 327 (quoting *In re Monumental Life Ins. Co.,* 365 F.3d 408, 420 (5th Cir. 2004)).

{32} Looking now at Plaintiff's proposed class definition, it becomes apparent that the definition does not explicitly exclude owners of fax numbers who

had previously consented to receive faxes. (Pl.'s Br. in Supp. of Mt. for Class Certif. 6.) Currently, the class is defined as "[t]he holders of the 978 telephone numbers contained in the InfoUSA database Exhibit LL between the dates of February 1, 2004 and December 31, 2004, inclusive." (Pl.'s Br. in Supp. of Mt. for Class Certif. 6.) As noted above, the InfoUSA List contains names that Defendant argues were included on Defendant's Customer List, and the Customer List contained individuals and organizations that had made inquiries into Papa's Grille and requested the restaurant to send faxes. (Def.'s Resp. to Pl.'s First Mt. for Class Certif. 4–5; Def.'s Answer to Interrog. 5–6.) Failure to exclude the numbers of authorizing owners means that by definition, "the proposed class [is] open to persons who ha[ve] given express prior invitation or permission to Defendant to receive fax advertisements." *Blitz*, 197 N.C. App. at 311, 677 S.E.2d at 10. While not conclusive regarding the Court's determination, this broad definition must be considered when determining the amount of time and inquiry that will be required to establish whether the individuals within the class definition are entitled to be members of the class. *See id.* (citing *Carnett's, Inc.*, 610 S.E.2d 529).

{33}    This Court turns next to an analysis of how a trial on the merits would be conducted. Under the facts of this case, an analysis must include an assessment of how consent, or lack of consent, would be established at trial. The court in *Blitz* cited as persuasive cases where plaintiff proceeded with "a theory of generalized proof of invitation or permission." *Blitz*, 197 N.C. App. at 311, 677 S.E.2d at 11. One of the cases particularly relevant to this Court's evaluation is *Kavu v. Omnipak Corp.* In *Kavu*, plaintiff proposed a class defined as "[a]ll persons who received an unsolicited advertisement . . . via facsimile from Defendant during the period of time defined by the applicable statute of limitations." *Kavu v. Omnipak Corp.*, 246 F.R.D. 642, 646 (W.D. Wash. 2007). When reviewing the trial court's certification of a class, the court in *Kavu* found that the question of consent could be easily shown by common proof and would not require individualized evidence. *Id.* at 647. The court stated that this was possible because Defendant had "obtained all of the recipients' facsimile numbers from the Manufacturers' News database. Therefore,

whether the recipients' inclusion in the Manufacturers' News database constitute[d] express permission to receive advertisements via facsimile [was] a common issue." *Id*. Simply put, certification was possible because the presence of a fax number within a single source would indicate whether consent was given.

{34}     Logically, the rationale for certification in *Kavu* is weakened when there is more than one source that could show consent, as was the case in *Gene & Gene LLC, v. BioPay, LLC.*  In *Gene*, the Defendant "culled fax numbers from purchased databases but also . . . various other sources--from information submitted by merchants through BioPay's website, from information submitted at trade shows BioPay attended, and also from lists of companies with which BioPay or its affiliates had an established business relationship." *Gene & Gene LLC*, 541 F.3d at 328.  The Defendant in *Gene & Gene, LLC*, convincingly asserted throughout discovery that because consent had been obtained for some of the numbers that had not been provided by the purchased database "no class-wide proof [was] available to decide consent and only mini-trials c[ould] determine th[e] issue." *Id*. at 329.

{35}     Here, Plaintiff has offered three questions that he argues would be common to all class members: "1. [w]hether Defendant's fax is an advertisement; 2. [w]hether Defendant violated the TCPA by faxing th[e] advertisement[s] without first obtaining express invitation or permission to do so; and 3. [w]hether Plaintiff and other class members are entitled to statutory damages." (Pl.'s Br. in Supp. of Mt. for Class Certif. 9.)  It is apparent to this Court that the answers to Plaintiff's second question will be a focal point of the litigants' evidence, and likely direct the outcome of the case. *See Harrison*, 170 N.C. App. at 550–53, 613 S.E.2d at 327–28.

{36}     While in *Kavu*, consent could be determined by deciding "whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements." *Gene & Gene LLC, v. BioPay LLC*, 541 F.3d at 328.  Here, as was the case in *Gene & Gene, LLC*, there could be more than one source from which consent might be shown.  As the *Blitz* court noted on appeal, Defendant was unsure whether "it had supplemented the [InfoUSA L]ist with fax numbers it ha[d] acquired through its normal course of business dealings." *Blitz*,

197 N.C. App. at 311, 677 S.E.2d at 10. In addition, consent could be shown for fax numbers owned by individuals on both the InfoUSA List and Defendant's Customer List because the Customer List includes individuals who had made inquiries about the restaurant and requested to receive faxes. (Def.'s Resp. to Pl.'s First Mt. for Class Certif. Ex. B; Def.'s Second Supplemental Answer to Pl.'s Second Set of Interrog. 5.) Because there is no common source from which the Court can determine consent, Plaintiff is left in the position of proving whether "Defendant . . . obtain[ed] express invitation or permission" for each number. (Pl.'s Br. in Supp. of Mt. for Class Certif. 9.) This would have the Court conducting individual inquiries into each number and result in the type of mini-trials that class actions are designed to avoid. The facts of this case leave Plaintiff unable to articulate a theory of generalized proof, and as a result, will focus the litigants' efforts on individual questions of whether each class member consented rather than any common questions the class might share.

{37} Lastly, this Court must consider the equities and drawbacks involved in certification of the proposed class. Plaintiff has alleged: (1) that Defendant sent fax advertisements through its agent Concord Technologies, Inc. to over 900 fax numbers; (2) that Defendant transmitted these faxes to each number at least 10 times during 2004; and (3) that over 7,000 of these fax were successfully transmitted. (Pl.'s Br. in Supp. of Mt. for Class Certif. 1–5; Pl.'s Mem. in Supp. of First Mt. for Class Certif. 1–2.) These transmissions were of an ad/coupon which the customer could redeem for a free lunch at Papa's Grille and an announcement of the opening of Front Street Café. (Pl.'s Br. in Supp. of Mt. for Class Certif. 1–5.)

{38} Thus far, Plaintiff is the only recipient who has come forward, or has been identified, to participate in this action. The likelihood that, in 2012, a single-page fax recipient would remember receiving a transmission in 2004, or have retained the alleged transmission, is extremely remote. Without class certification, as currently pled, Plaintiff at best might be entitled to a grand total of $2500 in statutory damages for the five transmissions he received. As a result, the significance of this lawsuit to Plaintiff rests primarily on its settlement value. (*See*

Tr. of Hr'g at 26, *Blitz v. Agean, Inc.*, 05 CVS 441 (Aug. 16, 2011) (The Court was struck by Counsel for Plaintiff's inappropriate but telling statement that "[w]hat [Defendant] fails to say is that *they are being defended very ably by the insurance company* that they had insurance with when these actions took place.") (emphasis added). "'Unfortunately, the (class action) remedy itself provide[s] opportunity for abuse, which [is] not neglected. Suits [are] sometimes . . . brought not to redress real wrongs, but to realize upon their nuisance value.'" *Lupton*, 1999 NCBC 3, ¶ 10 (quoting *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227, 93 L.Ed 1528 (1949)). As articulated in *Lupton*, equity does not condone using the class action procedure simply for leverage in settlement. *See Lupton v. Blue Cross & Blue Shield*, 1999 NCBC 3, ¶¶ 10–11.

## VI.
## CONCLUSION

{39}    Because Plaintiff has failed to provide a theory of generalized proof that allows for common questions to predominate over individual inquiries, they have failed to establish the existence of a class and therefore do not meet *Crow*'s requirements for class certification. The Court, therefore, does not reach the question of whether Plaintiff has met the other requirements for certification under *Crow*. Further, after analyzing the equitable considerations for certification in this case, the Court, in the exercise of its discretion, concludes that Class certification in this case would principally serve to provide Plaintiff with inappropriate leverage in settlement negotiations. Thus, even if the elements of *Crow* were met, certification would be unjust on equitable grounds.

{40}    For the reasons noted above, it is hereby **ORDERED** that Plaintiff's Motion for Class Certification is **DENIED**.

**SO ORDERED**, this the 11th day of April, 2012.