JONATHAN BLITZ, on behalf of himself and all others similarly situated, Plaintiff-Appellant v. AGEAN, INC., Defendant-Appellee

No. COA08-686

(Filed 2 June 2009)

**1. Appeal and Error— denial of class certification—issue of law—de novo review—equity may be considered**

While appeal from the denial of class certification generally involves an abuse of discretion standard of review, the Court of Appeals reviews issues of law, such as statutory interpretation, *de novo*. Class actions should be permitted where they serve useful purposes, balanced against inefficiency or other drawbacks; among the matters the trial court may consider in its discretion are matters of equity.

**2. Class Actions— certification—fax advertising—individualized issues—fact-based approach**

The primary issue concerning class certification in a case under the Telephone Consumer Protection Act (TCPA) involving fax advertisements was whether, under the "commonality and typicality" prong of the test, individualized issues concerning unsolicited advertisements predominated over issues of law and fact common to the proposed class members. A fact-based approach was adopted over a bright line rule.

**3. Telecommunications— fax advertising—established business relationship**

An existing established business relationship did not constitute prior express permission or invitation to receive unsolicited fax advertisements before the amendment to the federal statute to include that exception.

**4. Class Actions— fax advertising—established business relationships—excluded from proposed class—relevance**

Even though plaintiff in an action involving fax advertising by a restaurant expressly excluded from the proposed class all persons or entities having an established business relationship (EBR) with defendant, the issue remained relevant because those people had to be identified to ensure removal from the proposed class. Defendant had the obligation to keep records documenting any prior express invitation or permission.

BLITZ v. AGEAN, INC.

[197 N.C. App. 296 (2009)]

**5. Class Actions— fax advertising—small claims court—not a superior venue**

Small claims court cannot, *per se*, be a superior venue (for class certification purposes) for violations of the Telephone Consumer Protection Act (TCPA) in North Carolina because it does not have the authority to grant injunctions. Furthermore, the amount in controversy could easily exceed the small claims court jurisdictional limit, and the actions of a single individual could theoretically lead to many actions being heard at all trial levels, leading to inconsistent decisions on the same acts and evidence, with serious over burdening of trial court resources.

**6. Telecommunications— fax advertising—class action—unsolicited communications**

A plaintiff seeking class certification for a Telephone Consumer Protection Act case involving fax advertising by a restaurant had the burden of showing that some of the advertisements were unsolicited, but the possibility that some proposed class members might later be removed should not automatically defeat class certification. Plaintiff should present the court with a reasonable means of ensuring that there will not be an inordinate number of proposed class members who do not belong in the class, and should present the court as tailored a proposed class as is practicable.

**7. Class Actions— certification—Telephone Consumer Protection Act claims—not per se inappropriate**

A trial court ruling denying class certification in a Telephone Consumer Protection Act (TCPA) fax advertising case was based upon a misapprehension of the law and thus constituted an abuse of discretion. Claims brought pursuant to the TCPA are not per se inappropriate for class actions; decisions on whether to certify TCPA claims for class actions should be made on the basis of the particular facts presented and theories advanced, and the trial court has broad discretion in determining whether class certification is appropriate.

**8. Telecommunications— unsolicited fax advertising—summary judgment**

The trial court erred by granting defendant's motion for summary judgment regarding three unsolicited faxes in an action under the Telephone Consumer Protection Act involving fax advertising by defendant restaurant. It cannot be held that there

were no issues of material fact concerning the number of faxes sent by defendant to plaintiff.

**9. Appeal and Error— remand on other grounds—spoliation— right to argue**

As summary judgment was improperly granted, the issue of spoliation was not addressed and plaintiff retained the right to argue the issue at trial.

Appeal by Plaintiff from order entered 25 June 2007 and from order and judgment entered 3 March 2008 by Special Superior Court Judge Albert Diaz in Special Superior Court for Complex Business Cases. Heard in the Court of Appeals 3 December 2008.

*Margulis Law Group, by Max G. Margulis and Dewitt Law, PLLC, by N. Gregory DeWitt, for Plaintiff-Appellant.*

*Hoof & Hughes, PLLC, by J. Bruce Hoof, for Defendant-Appellee.*

McGEE, Judge.

Defendant operates two restaurants in Durham, North Carolina: Papa's Grill and Front Street Cafe. Defendant obtained a list of approximately 900 business fax numbers (the list) from InfoUSA, a list broker, in the spring of 2004. Defendant then contracted with Concord Technologies, Inc. (Concord) for Concord to send Defendant's fax advertisements to all the numbers on the list at Defendant's direction. It is uncertain from the record whether the list obtained from InfoUSA was augmented by additional fax numbers obtained directly by Defendant from its customers.

Defendant, through Concord, sent 7,000 fax advertisements to the fax numbers on the list during 2004. Plaintiff obtained a fax number in September of 2004 and Plaintiff's number was included on the list. Plaintiff alleged in his complaint that he received five unsolicited fax advertisements from Defendant. Plaintiff retained two of the fax advertisements sent by Defendant, but claimed to have discarded the other three.

Plaintiff filed an amended class action complaint on 11 February 2005, alleging that Defendant had violated 47 U.S.C. § 227 of the Telephone Consumer Protection Act (TCPA) by sending unsolicited fax advertisements to Plaintiff and the other proposed class members. Plaintiff sought the statutory damages of $500.00 for each un-

**BLITZ v. AGEAN, INC.**

[197 N.C. App. 296 (2009)]

solicited fax advertisement sent by Defendant to any member of the proposed class. Alleging Defendant's actions were willful and knowing, Plaintiff further sought to treble those damages as permitted by 47 U.S.C. § 227(b)(3). Plaintiff later abandoned his claim for treble damages.

Plaintiff moved for class certification on 17 October 2006, which ·motion was denied by order filed 25 June 2007. Plaintiff moved for partial summary judgment on 15 November 2007, arguing he should obtain a favorable judgment as a matter of law for two of the five fax advertisements, and that the issue of the additional three fax advertisements should go to trial. Defendant responded to Plaintiff's motion for partial summary judgment, and moved for summary judgment in its favor for all five fax advertisements. By order entered 3 March 2008, the trial court granted summary judgment in favor of Plaintiff for two of the fax advertisements, and granted summary judgment in favor of Defendant for the additional three fax advertisements. Plaintiff appeals from the trial court's orders denying class certification and granting Defendant partial summary judgment. Additional relevant facts will be discussed in the body of the opinion.

*Standards of Review*

**[1]** Plaintiff and Defendant appear to disagree on the appropriate standard of review for class certification in this case. Plaintiff argues that on these facts, *de novo* review is appropriate for all his arguments. Defendant contends that the proper standard of review is abuse of discretion.

Generally, appeal from the denial of class certification involves an abuse of discretion standard of review. *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 548, 613 S.E.2d 322, 326 (2005) (quoting *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 284, 354 S.E.2d 459, 466 (1987)) ("Where all the prerequisites are met, it is within the trial court's discretion to determine whether 'a class action is superior to other available methods for the adjudication of th[e] controversy.' "). However, our analysis does not end here. Defendant, arguing for an abuse of discretion standard, directs us in its memorandum of additional authority to *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13 (2d Cir. N.Y. 2003), which states:

The standards governing review of class certification decisions under Rule 23 are well known. Generally, a district court's de-

**BLITZ v. AGEAN, INC.**

[197 N.C. App. 296 (2009)]

cision regarding class certification is reviewed for abuse of discretion. An appellate court, however, is "noticeably less deferential . . . when [the district] court has denied class status than when it has certified a class[.]"

A district court vested with discretion to decide a certain matter is "empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions. A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." In contrast, *de novo* review is "review without deference," and is " 'traditionally' associated with appellate assessments of a district court's legal conclusions."

With these principles in mind, the standard of review applicable to class certification decisions can be succinctly summarized as follows: "We review class certification rulings for abuse of discretion. We review *de novo* the district court's conclusions of law that informed its decision to deny class certification."

*Id.* at 18 (citations omitted); *see also Augustin v. Jablonsky*, 461 F.3d 219, 224-25 (2d Cir. N.Y. 2006); *Turner v. Benefit Corp.*, 242 F.3d 1023, 1025 (11th Cir. Ala. 2001). We agree with the Second Circuit's analysis and find it in accord with North Carolina precedent involving matters of law decided in cases where the general standard of review is abuse of discretion. *See Edwards v. Wall*, 142 N.C. App. 111, 114-15, 542 S.E.2d 258, 262 (2001) (Whether witness qualifies as an expert is within the discretion of the trial court, but " 'where an appeal presents questions of statutory interpretation, full review is appropriate, and [a trial court's] "conclusions of law are reviewable *de novo*." ' ") (citations omitted); *Kinsey v. Spann*, 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000) ("Generally, a motion for new trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion. However, where the motion involves a question of law or legal inference, our standard of review is *de novo*.") (citations omitted). We hold that in appeals from the grant or denial of class certification this Court reviews issues of law, such as statutory interpretation, *de novo*.

"[A]n appellate court is bound by the [trial] court's findings of fact if they are supported by competent evidence." *Nobles v. First*

*Carolina Communications, Inc.*, 108 N.C. App. 127, 132, 423 S.E.2d 312, 315 (1992).

> Class actions should be permitted where they are likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results. The usefulness of the class action device must be balanced, however, against inefficiency or other drawbacks. [T]he trial court has broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23 or in this opinion.

*Crow*, 319 N.C. at 284, 354 S.E.2d at 466; *see also Maffei v. Alert Cable TV, Inc.*, 316 N.C. 615, 617, 342 S.E.2d 867, 870 (1986) (citation omitted); *Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 11, 550 S.E.2d 179, 188 (2001) (citations omitted), *questioned on other grounds by Reep v. Beck*, 360 N.C. 34, 619 S.E.2d 497 (2005). Among the matters and drawbacks the trial court may consider in its discretion involving class certification are matters of equity. *Maffei*, 316 N.C. at 621, 342 S.E.2d at 872 (benefits of class action must be weighed against the costs of such an action, "in terms of convenience and fairness to all involved") (citing *Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549 (S.D.N.Y. 1972); *see also Long v. Abbott Labs.*, 1999 NCBC 10, P42 (N.C. Super. Ct. 1999) (concerning the "equitable nature of the class action proceeding" and how equity "should not condone use of the class action procedure simply for leverage in settlement"); *Lupton v. Blue Cross & Blue Shield*, 1999 NCBC 3, P18 (N.C. Super. Ct. 1999) (citing *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1305 (4th Cir. N.C. 1978) (citation omitted)).

The standard of review for the trial court's partial grant of Defendant's motion for summary judgment is *de novo. Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. Moreover, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion."

*Id.* at 523-24, 649 S.E.2d at 385 (citations omitted).

### Class Certification

[2] The majority of Plaintiff's arguments on appeal involve the trial court's denial of Plaintiff's proposed class certification. " 'The party seeking to bring a class action . . . has the burden of showing that the prerequisites to utilizing the class action procedure are present.' " *Harrison*, 170 N.C. App. at 548, 613 S.E.2d at 325 (citations omitted). "Where all the prerequisites are met, it is within the trial court's discretion to determine whether 'a class action is superior to other available methods for the adjudication of the controversy.' " *Id.* at 548, 613 S.E.2d at 326. As stated above, however, "[t]he usefulness of the class action device must be balanced . . . against inefficiency or other drawbacks. [T]he trial court has broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23[.]" *Crow*, 319 N.C. at 284, 354 S.E.2d at 466.

The appellate courts of this State have not considered the issue of class certification in the context of the TCPA. Decisions from other jurisdictions have been split on this issue, and we must now make a determination of how the requirements for class certification should be applied in the TCPA context in North Carolina. N.C. Gen. Stat. § 1A-1, Rule 23 is the statute providing for class action suits in certain circumstances.

The North Carolina Supreme Court set forth the salient principles applicable to Rule 23(a) and the prerequisites for certification of a class action in *Crow* . . . . Under *Crow*, plaintiff must first establish that a class exists.

"[A] 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." [This is the "commonality and typicality" prong of the test.] Plaintiff must also show that the named representative will fairly and adequately represent the interests of all members of the class[;] that there is no conflict of interest between the named representatives and the unnamed class members; and that the class members are so numerous that it is impractical to bring them all before the court. The trial court has broad discretion in determining whether class certification is appropriate, however, and is not limited to those prerequisites which have been expressly enunciated in either Rule 23 or in *Crow*.

BLITZ v. AGEAN, INC.

[197 N.C. App. 296 (2009)]

*Nobles*, 108 N.C. App. at 131-32, 423 S.E.2d at 315 (citations omitted). The fax advertisements at issue in the case before us were allegedly sent in 2004. Therefore, the relevant version of the TCPA is the version in effect at that time. The 2004 version of the TCPA states in relevant part:

It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]

47 USCS § 227(b)(1)(C) (2004). "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 USCS § 227(a)(4) (2004).

The primary issue concerning class certification in this case, and the primary issue courts from other jurisdictions have based their decisions upon when dealing with class certifications involving the TCPA, is whether, under the "commonality and typicality" prong of the test, individualized issues concerning whether sent fax advertisements were "unsolicited" predominate over issues of law and fact common to the proposed class members.

### I.

Upon review of authority outside this jurisdiction, we find the following reasoning persuasive as it relates to the issues in this case:

For consent to send fax advertisements to be valid according to Section 227(b)(1)(c), Title 47, U.S. Code, the recipient must be *expressly* told that the materials to be sent are *advertising* materials and will be sent *by fax*. In the absence of each clear prior notice, express invitation or permission to send fax advertisements is not obtained.

Proof of "prior express invitation or permission" is the only complete defense to a claim that a defendant sent unsolicited fax advertisements in violation of the TCPA.

. . . .

The House Report on the TCPA discusses the phrase "prior express invitation or permission" and makes clear that advertisers have a duty to "establish specific procedures for obtaining prior

**BLITZ v. AGEAN, INC.**

[197 N.C. App. 296 (2009)]

permission and maintaining appropriate documentation with respect to such permission." U.S. House Rep. 102-317, at 13. This responsibility "is the minimum necessary to protect unwilling recipients from receiving fax messages that are detrimental to the owner's uses of his or her fax machine." U.S. Senate Rep. No. 102-178, at 8. Hence, a fax advertiser has an obligation to obtain prior express consent from the recipients of its advertisements and to keep and maintain records of such consent.

Consent may not be inferred from the meredistribution or publication of a fax number, or the existence of [an established] business relationship [(EBR)] between an advertiser and the recipient, in the absence of specific evidence of "prior express invitation or permission" to send advertisements by fax. The touchstone is *consent*. This is self-evident from the fact that "prior express invitation or permission" is the sole statutory defense to a cause of action based upon unsolicited fax advertisements. *See* Section 227(a)(4), Title 47, U.S. Code.

*Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 748-49 (Ohio C.P. 2003).[1]

The legislative history indicates that one of Congress' primary concerns was to protect the public from bearing the costs of unwanted advertising. Certain practices were treated differently because they impose costs on consumers. Because of the cost shifting involved with fax advertising, Congress . . . prohibited unsolicited faxes without the prior express permission of the recipient.

*In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd 14014, 14128 (2003).

The Commission has determined that the TCPA requires a person or entity to obtain the prior express invitation or permission of the recipient before transmitting an unsolicited fax advertisement. This *express* invitation or permission must be in writing and include the recipient's signature. The recipient must clearly indicate that he or she consents to receiving such faxed advertisements from the company to which permission is given, and provide the individual or business's fax number to which faxes may be sent.

*In re Rules*, 18 FCC Rcd at 14126.

---

1. Congress amended 47 U.S.C. 227(b)(1)(C) in 2005 to exempt persons with an EBR with the sender of the fax advertisement from this section.

Congress determined that companies that wish to fax unsolicited advertisements to customers must obtain their express permission to do so before transmitting any faxes to them. Advertisers may obtain consent for their faxes through such means as direct mail, websites, and interaction with customers in their stores. Under the new rules, the permission to send fax advertisements must be provided in writing, [and] include the recipient's signature and facsimile number[.] The Commission believes that given the cost shifting and interference caused by unsolicited faxes, the interest in protecting those who would otherwise be forced to bear the burdens of unwanted faxes outweighs the interests of companies that wish to advertise via fax.

*In re Rules*, 18 FCC Rcd at 14128-29.

In *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. La. 2008), a case where the district court's class certification of a TCPA claim was reversed, the Fifth Circuit stated:

violations of § 227(b)(1)(C) of the TCPA are not *per se* unsuitable for class resolution. But, as . . . cases also illustrate, there are no invariable rules regarding the suitability of a particular case filed under this subsection of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper. This of course means that plaintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that district courts must only certify class actions filed under the TCPA when such a theory has been advanced.

*Gene*, 541 F.3d at 328; *see also Carnett's, Inc. v. Hammond*, 610 S.E.2d 529, 532 (Ga. 2005). We agree with the Fifth Circuit's rejection of a bright line rule regarding class certification in the TCPA context, and adopt its fact-based approach. In reversing class certification, *Gene* contrasted the facts of its case with those of *Kavu v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007).

*Kavu* moved for the certification of a class composed of "[a]ll persons who received an unsolicited advertisement . . . . via facsimile from [the defendant]" within a given period. The *Kavu* court, in granting class certification, determined that the question of consent was susceptible to common proof. Importantly, the *Kavu* court did not disagree with earlier federal district court determinations that individual consent issues could preclude class certification. Rather, the *Kavu* court determined that in its

case the question of consent presented would not require "individual evidence." This was true because [the defendant] had obtained *all* of the fax recipients' fax numbers from a single purveyor of such information and because, given this fact, *Kavu* was able to propose a novel, class-wide means of establishing the lack of consent based on arguably applicable federal regulations. [47 C.F.R. § 64.1200(a)(3)(ii)(B), which indicates that if a "sender obtains the facsimile number from a [commercial database], the sender must take reasonable steps to verify that the recipient agreed to make the number available for distribution"]. The common question in *Kavu* was thus whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there were therefore no questions of individual consent. *[S]ee also Hinman v. M and M Rental Ctr.*, 545 F. Supp. 2d 802, 2008 WL 927910, at 4 (N.D. Ill. 2008) (granting class certification on similar grounds).

*Gene*, 541 F.3d at 327-28 (emphasis added). We note that 47 C.F.R. § 64.1200(a)(3) was amended, with an effective date after the fax transmissions relevant to this case. That portion of 47 C.F.R. § 64.1200 cited in *Gene, supra*, and relied upon by the *Kavu* Court, was not in effect for the relevant time period in this case.

*In Hinman*, the United States District Court for the Northern District of Illinois, Eastern Division reasoned:

The commonality and typicality requirements of Rule 23 are interrelated and tend to overlap. Commonality is satisfied by showing "a common nucleus of operative fact." Typicality is met if the class representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

The essence of [the defendant's] argument is that because the TCPA applies only to "unsolicited" faxes, an individualized analysis is required to determine whether each class member consented to transmission of the faxes in question. Indeed, several of the cases defendant cites have found that the consent issue precludes class certification. *See, e.g., Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Penn. 1995) (denying certification of TCPA claim based on "inherently individualized" question of consent) and *Kenro, Inc. v. Fax Daily Inc.*, 962 F.Supp. 1162 (S.D. Ind. 1997) (same). I am not bound, however, by these

authorities, nor do I find their reasoning persuasive. Indeed, I agree with Judge McCann's analysis in *Travel 100 Group v. Empire Cooler Service*, No. 03 CH 14510, 2004 WL 3105679 (Ill. Cir.) and find it applies equally here:

"[*Forman* and *Kenro*] belie a misunderstanding of telephone facsimile advertising as alleged in the complaint and materials supporting the instant Motion. Those courts seem to resolve the matter based upon a belief that this form of messaging is occasional or sporadic and not an organized program. To the contrary, the facts before this Court yield that this Defendant engaged a third party to send more than 3,000 facsimiles to targeted businesses. The manner in which the Defendant identified these recipients will not require individualized inquiry."

Under the circumstances, the question of consent may rightly be understood as a common question.

*Hinman*, 545 F. Supp. 2d at 806-07 (citations omitted).

The fact that, following certification, some putative members of the class will eventually be found to have consented to the receipt of [the defendant's] fax transmissions does not preclude certification of the class as recipients of unsolicited faxes from [the defendant].

*Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510, 523 (La. App. 1 Cir. 2008); *see also Am. Home Servs. v. A Fast Sign Co.*, 651 S.E.2d 119, 121 (Ga. Ct. App. 2007) (The proposed class did not fail "the commonality requirement based on the hypothetical existence of persons in the class against whom it could assert the existing business relationship exemption, despite not having any knowledge or record of such relationship. *See Hooters of Augusta v. Nicholson*, 245 Ga. App. 363, 368 (4) (537 SE2d 468) (2000).") (Note that *Am. Home Servs.* was decided after the amendment of the TCPA to include an express EBR exemption. This express exemption was not in the TCPA at the time the faxes in this case were sent.).

II.

In Plaintiff's third, fourth, fifth, sixth and tenth arguments, he contends the trial court erred in denying class certification on the basis that issues concerning whether potential class members had an EBR with Defendant, or whether they had given prior express permission or invitation to receive faxes from Defendant were "predominating individualized issues militating against class certification."

Plaintiff further argues that the trial court erred in ruling small claims court is a superior forum for TCPA claims. We agree in part, and remand to the trial court.

We first note that Plaintiff's first two arguments on appeal pertain to statutory interpretation of the TCPA involving the meaning of EBR under that statute, and whether the trial court erred in ruling an EBR constituted "express invitation or permission" to receive faxes under the TCPA as it then existed.

**[3]** In this case, Plaintiff defines the proposed class as follows:

All persons and other entities to whom Defendant sent or caused to be sent, one or more facsimile advertisement transmissions promoting the restaurants of Defendant from February 12, 2001 until February 11, 2005 inclusive, and *excluding those persons and other entities who had an established business relationship with Defendant at the time said facsimile advertisement transmissions were sent.* (Emphasis added).

These arguments are irrelevant to *this* appeal given the definition of the proposed class in the matter before us, which expressly *excluded* persons or entities having any EBR with Defendant. However, because of the possibility that the class definition may be amended upon remand, we hold that an EBR did not constitute prior express permission or invitation to receive unsolicited fax advertisements before the amendment of 47 USCS § 227 to include that exception. *See Gottlieb v. Carnival Corp.*, 595 F. Supp. 2d 212, 221 (E.D.N.Y. 2009) (citing cases reaching the same conclusion) ("Given the plain language of the TCPA and its legislative history, it is clear that Congress limited the EBR exemption to 'telephone solicitations,' and the only exemption from the prohibition on fax advertisements required the sender to obtain the express invitation or permission of the recipient.").

**[4]** In the case currently before us, because Plaintiff expressly excluded from the proposed class all persons or entities having an EBR with Defendant, the EBR issue was still relevant in determining whether individualized issues predominated and militated against class certification. This is because those persons having an EBR with Defendant had to be identified in order to ensure their removal from Plaintiff's proposed class.

The trial court found as fact that Defendant purchased the list in April of 2004, limited to numbers in three postal codes in the vicinity

**BLITZ v. AGEAN, INC.**

[197 N.C. App. 296 (2009)]

of Defendant's restaurants. Defendant then contracted with Concord to send fax advertisements to all the numbers on the list. Defendant, testifying that he was unaware of the TCPA, did not know, and made no attempt to determine, whether any of the fax numbers on the list included any businesses that had given prior express invitation or permission to receive fax advertisements from Defendant.

Defendant had served more than 500,000 meals in its twelve years of operation. During that period, Defendant received numerous requests that it fax its menus and other materials relating to the restaurants and their services. Defendant provided customers with "customer information cards" to obtain customer information, which Defendant kept in a computer database. Defendant was uncertain whether it added any of the additional fax numbers voluntarily provided by its customers to the list it purchased and sent to Concord. During 2004, Concord successfully transmitted 7,000 of Defendant's fax advertisements to the fax numbers on the list. [R.p. 87]

Concerning the "prior express invitation or permission" requirement, it was Defendant's obligation to maintain some form of record keeping to document any prior express invitation or permission. Had Defendant conducted the required verification before sending its fax advertisements, it could have established the express prior invitation or permission of at least some of the purported class members.

[5] The trial court further based its denial of class certification on its ruling that a class action on these facts did not represent a superior method of adjudicating violations of the TCPA. We disagree with some of the trial court's analysis. In reaching its conclusion, the trial court determined that small claims court was a superior forum in which to deal with violations of the TCPA. This conclusion ignores an important remedy available to plaintiffs who prevail in a TCPA action. "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—(A) an action based on a violation of this subsection [of the TCPA] or the regulations prescribed under this subsection to enjoin such violation[.]" 47 U.S.C. 227(b)(3) (2004). Small claims court cannot, *per se*, be a superior venue in this State for violations of the TCPA, because it does not possess the authority to grant injunctions.

[A]n action may be brought in the district court as a small claim if: "(1) The amount in controversy, computed in accordance with G.S. 7A-243, does not exceed [five] thousand dollars [($ 5,000)]; and (2) The only principal relief prayed is monetary, or the recov-

ery of specific personal property, or summary ejectment, or any combination of the foregoing in properly joined claims[.]"

*Wilson v. Jefferson-Green, Inc.*, 136 N.C. App. 824, 826, 526 S.E.2d 506, 507 (2000) (quoting N.C. Gen. Stat. § 7A-210). Further, depending on the number of allegedly unsolicited fax advertisements sent to any one person, the amount in controversy could easily exceed the $5,000.00 small claims court jurisdictional limit. In the case before us, Plaintiff's complaint sought an injunction against Defendant. Further, because the TCPA allows for trebling the $500.00 statutory damages in certain circumstances, and Plaintiff requested treble damages in his complaint, the requested monetary damages for the five unsolicited fax advertisements received from Defendant exceeds the $5000.00 jurisdictional limit for small claims in North Carolina.

In fact, depending on the amounts in controversy, and whether an action is designated as a mandatory complex business case, the actions of a single defendant could theoretically lead to hundreds, or thousands, of individual actions being heard in small claims court, general district court, general superior court, and business court. This scenario could lead to inconsistent decisions based upon identical acts and evidence, and serious over-burdening of our trial court resources.

An individual seeking only monetary recompense for a small number of unsolicited fax advertisements received may find small claims court a convenient forum. However, we must hold as a matter of law that small claims court cannot represent a superior forum to a class action in *all* instances involving TCPA claims. *See Accounting Outsourcing, L.L.C. v. Verizon Wireless Pers. Communs., L.P.*, 2007 U.S. Dist. LEXIS 97153, 2-5 (M.D. La. Aug. 2, 2007).

III.

[6] Having reviewed *de novo* the law underpinning the trial court's denial of class certification, we now turn to the specific facts of the instant case to determine if denial of class certification was proper. We have determined that "plaintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that district courts must only certify class actions filed under the TCPA when such a theory has been advanced." *Gene*, 541 F.3d at 328.

Further, Plaintiff's amended proposed class was not limited to persons receiving "unsolicited" fax advertisements (nor did it exclude

**BLITZ v. AGEAN, INC.**

[197 N.C. App. 296 (2009)]

persons who had given express prior invitation or permission, which is another means of limiting the class to persons receiving unsolicited fax advertisements). Therefore, by its very definition, the proposed class was open to persons who had given express prior invitation or permission to Defendant to receive fax advertisements. *See Carnett's, Inc. v. Hammond*, 610 S.E.2d 529, 532 (Ga. 2005).

It was Plaintiff's burden to show the fax advertisements sent to the class were unsolicited. The possibility that some proposed class members will later be removed should not *automatically* defeat class certification. Plaintiff should present the trial court with some reasonable means of ensuring there will not be an inordinate number of proposed class members who do not belong in the class, and further show that he has, through thorough discovery and investigation, presented the trial court with as tailored a proposed class as practicable. *See Harrison*, 170 N.C. App. at 548, *Gene*, 541 F.3d at 329; 613 S.E.2d at 325-26; *Carnett's*, 610 S.E.2d at 532.

[7] In the present case, Plaintiff has alleged that Defendant obtained a list of business fax numbers without any attempt to determine whether the owners of these fax numbers gave express prior invitation or permission to receive fax advertisements from Defendant. Defendant testified that it did not know if it had supplemented the list with fax numbers it had acquired through its normal course of business dealings, and the trial court had no basis to determine how many of the fax numbers included in the list represented persons or entities that had given express prior invitation or permission to Defendant to receive fax advertisements. *Gene*, 541 F.3d at 329.

Plaintiff's arguments on appeal concern the difficulty or ease of determining whether any individual recipient of Defendant's fax advertisements gave express prior invitation or permission. The record before us does not establish that Plaintiff proceeded at the class certification hearing on a theory consistent with that stated in *Gene* and *Kavu*, namely a theory of generalized proof of invitation or permission. As stated in *Gene*: "The common question in *Kavu* was . . . whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there were therefore no questions of individual consent." *Gene*, 541 F.3d at 327-28.

We disagree with some of the legal reasoning of the trial court in this case, as we find different authority more persuasive. We hold that claims brought pursuant to the TCPA are not *per se* inappropriate for class actions. Decisions whether to certify TCPA claims for

BLITZ v. AGEAN, INC.

[197 N.C. App. 296 (2009)]

class actions should be made on the basis of the particular facts presented and theories advanced, and the "trial court has broad discretion in determining whether class certification is appropriate, . . . and is not limited to those prerequisites which have been expressly enunciated in either Rule 23 or in *Crow*." *Nobles*, 108 N.C. App. at 132, 423 S.E.2d at 315.

Because we hold North Carolina should follow a different line of opinions concerning class certification of TCPA cases, we hold that the trial court's ruling denying class certification was based upon a misapprehension of law, and thus constituted an abuse of discretion. " '[W]here a ruling is based upon a misapprehension of the applicable law, the cause will be remanded in order that the matter may be considered in its true legal light.' " *Dunleavy v. Yates Constr. Co.*, 106 N.C. App. 146, 154, 416 S.E.2d 193, 198 (1992) (quoting *Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979)). *See also Wilson v. McLeod Oil Co.*, 327 N.C. 491, 523, 398 S.E.2d 586, 603 (1990) (holding that when the judge's order "was signed under a misapprehension of the law," then "the better approach is to vacate the order and remand for reconsideration" of the order in accordance with the appellate court's opinion); *Stanback v. Stanback*, 270 N.C. 497, 507, 155 S.E.2d 221, 229 (1967) (quoting *State v. Grundler*, 249 N.C. 399, 402, 106 S.E.2d 488, 490 (1959)) (" 'And it is uniformly held by decisions of this Court that where it appears that the judge below has ruled upon [a] matter before him upon a misapprehension of the law, the cause will be remanded to the Superior Court for further hearing in the true legal light.' "). We therefore reverse and remand to the trial court for reconsideration of Plaintiff's motion for class certification consistent with the legal holdings of this opinion.

*Summary Judgment*

[8] In Plaintiff's seventh and ninth arguments, he contends the trial court erred in granting Defendant's motion for summary judgment with respect to three unsolicited faxes Plaintiff alleged Defendant sent him in the relevant time period. We agree.

Plaintiff's relevant allegations include: (1) Plaintiff received more than two faxes from Defendant, but only kept two of the faxes; (2) Plaintiff's fax number was on the list Defendant used to send its fax solicitations, and Defendant testified that it instructed Concord to send fax solicitations to the entire list on at least five occasions after Plaintiff began using the relevant fax number; and (3) Defendant

BLITZ v. AGEAN, INC.

[197 N.C. App. 296 (2009)]

destroyed relevant evidence, such as fax logs, that had recorded the actual transmission data for the fax transmissions to Plaintiff and others on the list.

When considering this evidence, construing all inferences of fact in favor of Plaintiff and against Defendant, as we must do, *Forbis*, 361 N.C. at 523-24, 649 S.E.2d at 385, we cannot hold that there were no issues of material fact concerning the number of faxes sent by Defendant to Plaintiff, so as to determine Defendant should have been granted judgment as a matter of law on the three additional faxes allegedly sent to Plaintiff by Defendant. Issues concerning these additional three faxes constitute genuine issues of material fact that should have been decided by the trier of fact, and not by the trial court as a matter of law. We reverse and remand to the trial court for further action consistent with this holding.

### Spoliation

[9] In Plaintiff's eighth argument, he contends the trial court erred in finding that there was no citation in the record to evidence of spoliation by Defendant.

Plaintiff's argument is based upon a footnote in the trial court's summary judgment order which states: "Plaintiff alleges that this evidentiary vacuum [the absence of evidence supporting Plaintiff's contention that he received five unsolicited fax advertisements] was caused by Defendant's 'spoliation of evidence' but noticeably absent from Plaintiff's papers is any citation to the record supporting that claim." We note that the trial court's order does not state that there was no evidence in the record supporting Plaintiff's claim of spoliation, only that Plaintiff failed to cite to any such evidence in his "papers."

As we have held summary judgment was improperly granted to Defendant with respect to the three additional faxes of the alleged five fax advertisements received by Plaintiff, we need not address this argument. Plaintiff retains the right to argue spoliation at trial in support of his claim that he received three additional unsolicited fax advertisements from Defendant.

Affirmed in part, reversed and remanded in part.

Judges BRYANT and GEER concur.