**KAREN S. LITTLE, L.L.C.,**
Petitioner/Respondent,

v.

**DRURY INNS, INC.,**
Respondent/Appellant.

No. ED 92796.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 12, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 22, 2010.

Application for Transfer Denied
April 20, 2010.

Spencer Fane Britt & Browne LLP, Gerald Phillip Greiman, Michael Bryon Calvin, Jennifer Chierek Znosko, St. Louis, MO, for Appellant.

Margulis Law Group: Max George Margulis, Chesterfield, MO, John Stanton Steward, Co–Counsel, Patrick Timothy Conroy, Co–Counsel, Clayton, MO, Joseph V. Neill, Co–Counsel, St. Louis, MO, for respondent.

Before GLENN A. NORTON, P.J., and MARY K. HOFF, J., and LAWRENCE E. MOONEY, J.

## OPINION

PER CURIAM.

Drury Inns, Inc. (Drury) appeals from the Memorandum and Order Regarding Class Certification (Order) granting Karen S. Little, L.L.C. (Karen Little) its motion for class certification. In the underlying action, Karen Little alleges the sending of unsolicited advertising faxes to over 8,000 members, in violation of the federal Telephone Consumer Protection Act of 1991, 47 U.S.C. Section 227 (TCPA), and seeks to recover statutory damages. On appeal, Drury argues the trial court erred in granting Karen Little's motion because (1) inquiry into the existence of an established business relationship (EBR) between Drury and each putative class member would defeat the predominance requirement under Rule 52.08 and, if applicable, would remove the offending fax from the TCPA's prohibitions, and; (2) class action is not superior to other available methods for the fair and efficient adjudication of this controversy. We affirm.

*Factual and Procedural History*

On February 26, 2002, Karen Little received an unsolicited fax advertising the goods or services offered by Drury. Drury admitted that it hired Sunbelt Communications & Marketing, LLC (Sunbelt) to "send the faxes at issue in this lawsuit" and that it "hired Sunbelt to fax a one-page flyer to approximately 20,000 fax numbers." Drury stated it had no knowledge of how Sunbelt determined or obtained the fax numbers of the intended recipients of the faxes. Drury also stated it had no information as to the identity of the persons to whom the faxes were sent or the fax numbers to which its faxes were sent. Drury identified Sunbelt as the party having this information. Drury stated it never was given access to Sunbelt's database. Drury stated that although it maintains a database of its own customers, it did not supply that database to Sunbelt. Drury stated that, at the time the faxes were sent, it had no policies concerning obtaining express permission to send faxes. Drury stated it took no independent steps to get permission from any of the recipients of its faxes relying only on Sunbelt's representation that it had permission.

Sunbelt admitted that it was engaged by Drury to transmit a specific number of faxes to fax machines in the State of Missouri. Sunbelt admitted that on or about February 26, 2002, Sunbelt attempted to transmit a facsimile for Drury to approximately 17,212 numbers within the Missouri area codes 314 and 636. Sunbelt delivered to its attorneys of record a hard-drive that contained a duplicate of Sunbelt's original log file for February 26, 2002. The hard-drive contains a log file showing that Drury's fax image was successfully transmitted to exactly 8,360 fax numbers that were listed in the log files. Sunbelt stated it did not obtain the prior express permission or invitation of any of the fax recipients to send advertising faxes on behalf of Drury.

Karen Little filed this lawsuit alleging that in sending or causing to be sent unsolicited advertising materials via fax, Drury violated the TCPA. Karen Little sought to recover statutory damages as well as injunctive relief preventing Drury from further transmission of unsolicited fax advertisements. Following the filing of its motion for class certification and the hearing on the motion, the trial court found all relevant elements of Rule 52.08 were satisfied and certified the following class: "The end users of the 8,360 fax numbers in the (314) and (636) area codes that the Sunbelt computer logs show were sent a one-page facsimile transmission of image number 8170 on behalf of Drury Inns, Incorporated in February and/or March, 2002." Drury now appeals.[1]

### Standard of Review

■ We review a trial court's order granting class certification under an abuse of discretion standard. *Wright v. Country Club of St. Albans*, 269 S.W.3d 461, 464–65 (Mo.App. E.D.2008). We will find an abuse of discretion only if the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* The trial court does not abuse its discretion where reasonable persons could differ with respect to the propriety of its ruling. *Id.* We will err on the side of upholding certification in cases where it is a close question because Rule 52.08(c)(1) provides for decertification of a class before a decision on the merits. *Id.* Similarly, because class certification is subject to later modification, we will err in favor of, and not against, allowing maintenance of the class action. *Id.*

### Predominance Requirement

■ In its first point, Drury attacks the predominance element of Rule 52.08(b)(3) by arguing that the trial court should have found that an EBR was a valid exemption to the junk fax provisions of the TCPA. Specifically, Drury contends that if an EBR is applicable, then there would need to be an individualized inquiry into the nature of each of the over 8,000 "relationships" between Drury and the putative class members thereby making class certification inappropriate under the predominance element. We disagree.

■ Rule 52.08(b)(3) provides that an action may be maintained as a class action if, "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 52.08(b)(3). The predominance inquiry under Rule 52.08(b)(3) asks whether the class is "seeking to remedy a common legal grievance." *Dale v. DaimlerChrysler Corp.*, 204

---

**1.** Drury filed its Petition to Appeal from Order Granting Class Certification pursuant to Section 512.020(3), RSMo Cum.Supp.2007, and Rule 84.035, which was granted.

S.W.3d 151, 175 (Mo.App. W.D.2006). "Predominance" does not require that all issues be common to the class members. *Id.* Rather, it requires that common issues substantially predominate over individual ones. *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 381 (Mo.App. E.D.2005). To classify an issue as common or individual, a court looks to the nature of the evidence required to show the allegations of the petition. *Id.* at 382. If the same evidence on a given question will suffice for each class member, then it is common; if the evidence on the question varies from member to member, then it is an individual issue. *Id.* Thus, "if the same evidence will suffice for each member to make a prima facie showing as to a given question, then it is a common question." *Id.*

The TCPA was enacted on December 20, 1991. The relevant portion of the TCPA, as in effect in 2002, prohibits the use of any telephone facsimile machine, computer, or other device to send an "unsolicited advertisement" to a telephone facsimile machine. 47 U.S.C. Section 227(b)(1)(C). An unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior **express** invitation or per-mission." 47 U.S.C. Section 227(a)(4). [Emphasis added.] The TCPA provides a private right of action against a sender of an unsolicited advertisement, with damages of $500 or actual damages, whichever is greater, for each violation. 47 U.S.C. Section 227(b)(3). The trial court is allowed to treble these damages if it finds the violation to be willing or knowing. *Id.*

In 1992, the FCC adopted rules and codified them in the Code of Federal Regulations (CFR), implementing the TCPA, including restrictions on the transmission of unsolicited facsimile advertisements by facsimile machines. 47 C.F.R. Section 64.1200 (1992). The 1992 Rules defined EBR to mean:

> A prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party. 47 CFR Section 64.1200(f)(4) (1992).[2]

■ Drury raises the 1992 Rules as an affirmative defense arguing the trial court

---

**2.** On July 3, 2003, the FCC revised many of its telemarketing and facsimile advertising rules for the TCPA. The FCC reversed its prior conclusion that an EBR could provide companies with an exemption to the TCPA permitting them to send facsimile advertisements to their customers without prior express permission or invitation. *See Rules and Regulation Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14127–28, para. 189. (2003 Rules) The FCC concluded that the recipient's express consent must be in writing and include the recipient's signature. *Id.* at para. 191. Following the release of the 2003 Rules, several entities filed petitions for reconsideration, most pertaining to the FCC's advertising rules.

On August 18, 2003, in response to those petitions, the FCC issued an *Order on Reconsideration* that delayed until January 1, 2005 the effective date of the requirement that the sender of a facsimile advertisement first obtain the recipient's prior express permission in writing. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 16972, 16974–75, para. 5–6 (2003) (2003 Order on Reconsideration). Comments filed after the release of the 2003 Order on Reconsideration indicated that many organizations needed additional time to secure this prior written permission. *Id.* at 5. On October 1, 2004 and June 27, 2005, the FCC further delayed the effective date of these requirements, and they never took effect.

was required to follow the FCC's interpretation of the statute and that the Hobbs Act [3] prohibited the trial court from applying the law as written instead requiring the trial court to apply the law as interpreted by the FCC.

▆ When interpreting agency regulations, if the intent of Congress is clear, no further interpretation is needed. *Chevron United States Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the United States Supreme Court held in pertinent part:

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* Here, the TCPA's language is plain and clear that the only exception to liability for sending junk faxes is if the sender had the recipient's "prior express invitation or permission." 47 U.S.C. Section 227(a)(4) and (b)(1)(C). Because the TCPA is plain and clear on its face, the inquiry ends before even considering the FCC's interpretation. There was no reason for the trial court either to accept or reject the FCC's interpretation the statute, and, therefore, Drury's argument that the Hobbs Act establishes a jurisdictional bar is irrelevant. The trial court read the statute and found it unambiguous. The trial court, applying the appropriate method of statutory construction under *Chevron,* used the plain and unambiguous language of the statute itself and the inquiry was complete. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. Because Congress was clear, there was no need to delve into the FCC Rules regarding EBR defense for unsolicited fax transmissions under the TCPA.

Even if the EBR defense were available, however, Drury has failed to produce any evidence that any such relationship existed between Drury and any class member. And even if Drury had produced evidence of an EBR, this still did not constitute a "prior **express** invitation or permission." [Emphasis added.] At best, an EBR may be construed as a form of "implied" consent.[4]

In the case before us, the predominating issue is whether Drury's conduct violated

---

On July 9, 2005, Congress enacted the Junk Fax Prevention Act (JFPA), amending the TCPA's fax advertising provisions. The JFPA's principal change to the TCPA was its creation of an EBR defense for advertising faxes, and expansion of the definition of EBR to include relationships with business subscribers as well as residential subscribers. Prior to the 2005 amendment, which is the time period relevant to the case at bar, prior express consent was the only defense to a TCPA claim for fax advertisements. *Travel Travel Kirkwood, Inc. v. Jen N.Y. Inc.*, 206 S.W.3d 387, 392 (Mo.App. E.D.2006).

3. The Hobbs Act reserves to the federal courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [FCC] made reviewable by section 402(a) of title 47." *28 U.S.C. Section 2342. Section 402(a),* in turn, provides that in "any proceeding to enjoin, set aside, annul, or suspend any order of the [FCC]," judicial review "shall be provided by and in the manner prescribed in chapter 158 of title 28." 47 U.S.C. Section 402(a).

4. This court has already addressed the issue and found there is no "implied consent" ex-

the TCPA and this issue is common to all class members. Similarly, there are no individual damages in this case, because the TCPA sets the amount of damages recoverable. The predominance element is satisfied. The trial court did not abuse its discretion in certifying the class. Point I is denied.

*Superiority*

■ In its second point, Drury argues the trial court abused its discretion in finding that a class action is the superior method for adjudicating this case. We disagree.

■■ Class actions are designed to provide an "economical means for disposing of similar lawsuits" while simultaneously "protecting defendants from inconsistent obligations and the due process rights of absentee class members." *State ex rel. Coca–Cola Co. v. Nixon*, 249 S.W.3d 855, 860 (Mo. banc 2008) (*citing United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402–03, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). The underlying question in any class action certification is whether the class action device provides the most efficient and just method to resolve the controversy at hand. *Id.* at 860–61.

Rule 52.08(b)(3) sets forth the factors the trial court should consider when deciding the superiority element, which include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

In its Order, the trial court analyzed the superiority issue and found that a class action is the superior method in this case pursuant to Rule 52.08(b)(3). Drury argues, however, that class relief is not available under the TCPA. Drury's argument is without merit.

■ Unless there is a clear and direct statutory provision precluding class actions for a given cause of action, then class actions are authorized. *See Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (absent a direct expression by Congress of its intent to depart from the usual course of trying "all

ception for TCPA junk fax cases arising prior to passage of the JFPA in 2005. *Travel Travel, Kirkwood, Inc.*, 206 S.W.3d at 392. In *Travel*, the court specifically found

> If the consent [for an unsolicited advertisement] is not manifested by explicit and direct words, but rather is gathered only by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties, it is not express consent. Rather, it is merely implied consent. And, without express consent, the law forbids the defendant from sending unsolicited facsimiles to the plaintiff. *Id.*

Similarly, in *Blitz v. Agean, Inc.*, 677 S.E.2d 1 (N.C.App. 2009), a TCPA fax class action nearly identical to the case at bar, the appellate court reversed and remanded the trial

court's denial of class certification holding that proof of "prior express invitation or permission" is the only complete defense to a claim that a defendant sent unsolicited fax advertisements in violation of the TCPA. *Blitz*, 677 S.E.2d at 6. The court went on to say:

> Consent may not be inferred from the mere distribution or publication of a fax number, or the existence of an established business relationship (EBR) between an advertiser and the recipient, in the absence of specific evidence of "prior express invitation or permission" to send advertisements by fax. The touchstone is consent. This is self-evident from the fact that "prior express invitation or permission" is the sole statutory defense to a cause of action based upon unsolicited fax advertisements. *Id.*

suits of a civil nature" under the Rules established for that purpose, class relief is appropriate in civil actions). The TCPA has no ban or restrictions on class actions. Under the TCPA, class certification is not only not prohibited, many jurisdictions throughout the country have routinely allowed class certification in contexts similar to the case at bar where third parties were utilized to send "blast" faxes. *See e.g., Holtzman v. Turza,* 2009 WL 3334909 (N.D.Ill. October 16, 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.,* 2009 WL 2581324 (N.D.Ill. August 20, 2009); *Am. Home Servs. Inc. v. A Fast Sign Co., Inc.,* 287 Ga.App. 161, 651 S.E.2d 119, 2007 WL 2265578 (2007); *Transp. Inst. v. Seattle PC–Magic, Inc.,* 2005 WL 5267529 (Wash.Super. June 8, 2005); *Whitting Corp. v. Sungard Corbel, Inc.,* 2005 WL 5569575 (Ill.Cir. Nov.9, 2005); *Dubsky v. Advanced Cellular Comm., Inc.,* 2004 WL 503757 (Ohio C.P. Feb. 24, 2004); *Penzer v. MSI Mktng., Inc., d/b/a Y2Marketing,* 2003 WL 25548019 (Fla.Cir. Apr. 2, 2003).[5]

Nothing in the text of the statute, regulations or legislative history of the TCPA indicate that Congress intended to preclude class actions. Here, class certification was proper given that there was a simple set of facts common to all class members applying the same legal theory under a uniform federal law where damages are statutorily set and need not be individually proved. There was no abuse of discretion. Point II is denied.

### Conclusion

The Order granting class certification is affirmed.

---

motion for class certification, Karen Little cited to fifty opinions approving TCPA class certification in similar contexts.